■    FRESH MEADOWS ASSOCIATES, Appellant, v NEW YORK CITY CONCILIATION AND APPEALS BOARD, Respondent.—Order and judgment, Supreme Court, New York County, entered on April 8 and June 10, 1976, respectively, affirmed for the reasons stated by Nadel, J., at Special Term, without costs and without disbursements. Concur—Birns, Capozzoli, Lane and Lynch, JJ.; Murphy, J. P., dissents in the following memorandum: Murphy, J. P. (dissenting). The instant proceeding involves another example of the type of unrealistic administrative determination which causes potential investors and legitimate builders to refrain from doing business in or with New York City. (Cf. *Matter of 54/55 Sixth Realty Corp. v Leventhal,* 51 AD2d 714.) The essential facts are undisputed. The residential complex in issue, known as Fresh Meadows, consists of 3,287 apartments contained in 138 garden-type and three high-rise buildings in the Borough of Queens. The development was completed in 1949 by the New York Life Insurance Company and acquired by petitioner in October, 1972. The project is covered by the Rent Stabilization Law (Administrative Code of City of New York, tit YY). The rent paid by each tenant includes gas and electricity service. The landlord does not provide central air conditioning and each lease provides that no air-conditioning unit may be installed without the landlord's prior written consent and then only if the "tenant pays as additional rent such charge as may be required by the Landlord." Despite the restrictive language in the afore-mentioned lease clause, the landlord's practice at Fresh Meadows, on the base date of the Rent Stabilization Law (May 31, 1968), was to authorize air-conditioning units to be installed by tenants, conditioned solely on their agreement to install and maintain the same at their own cost and expense and to pay a charge to cover the cost of electric current furnished to operate the unit each year. The original charge of $35 (later increased to $50) for the first unit and $25 (later increased to $37.50) for each additional unit was adequate in the early years of rent stabilization. To this were added guidelines increases authorized by the Rent Guidelines Board to landlords who supply electricity on a rent inclusion basis. In 1973 and early 1974, as a result of the project's loss of conjunctional billing rights and the steep rise in fuel prices following the October, 1973, mid-east war, the $50 charge for new units plus the guidelines increases became totally inadequate to cover the cost of furnishing current to operate these units. Commencing with the 1974 cooling season (May 1, 1974) petitioner sought to increase the charge to $98 per unit (reflecting the appropriate electrical cost for each air conditioner as per a Consolidated Edison Co. survey); and when it met tenant resistance, it elected, in September, 1974, to refuse to permit the installation of any new units. The tenants filed complaints with respondent covering both aspects of petitioner's conduct. Petitioner answered and, *inter alia,* sought a prior opinion with respect to its right to treat tenant installations of air conditioners as a license. Respondent held, among other things, that the base date practice of permitting tenants to install air conditioners at the prevailing charge then in effect was a practice which could not be curtailed. Respondent also held

that a yearly charge of $98 for the first air conditioner and $70 for each additional air conditioner installed after May 1, 1974 was "not an unreasonable current initial charge". Petitioner does not challenge these findings. However, and here is where the dispute arises, respondent limited electricity charges for installations prior to May 1, 1974, to the actual rate initially charged plus appropriate guidelines allowances; and limited all future increases in such charges to guidelines allowances commensurate with the lease renewal rate irrespective of actual electricity costs to petitioner. We recently had occasion to consider the effect of the steep rise in fuel prices commencing in late fall, 1973, and the desire of many landlords, as a direct consequence thereof, to change their prior practice of furnishing unmetered-unlimited electricity on a rent inclusion basis and to now compel their tenants to pay the utility company directly for this service. (See *Taleff Realty Corp. v Joy,* 54 AD2d 423.) Petitioner, in the instant proceeding, does not seek to place its tenants on a direct billing basis. It only requests reimbursement, on a cost basis, for the electricity consumed by those tenants who avail themselves of the privilege of installing and maintaining air conditioners. Special Term, though "not unsympathetic to the petitioner's situation" found that "respondent administrative agency has not acted arbitrarily" and suggested that petitioner and others similarly situated seek relief from the Legislature. However, since respondent never formally and explicitly responded to petitioner's request for a prior opinion as to its right to treat the installations as a license, Special Term remanded for such purpose; a useless gesture, in my opinion, in view of respondent's decision. We are, of course, obliged to give due weight to administrative construction of statutes by the agency empowered to implement it. *(Matter of Howard v Wyman,* 28 NY2d 434.) But we are not compelled to confirm statutory interpretations which, though perhaps supported by the literal language of a statute, result in absurd and unexpected consequences. *(Matter of Chatlos v McGoldrich,* 302 NY 380.) As limited by the various concessions made by petitioner on this appeal, the sole issue presented is whether a landlord is entitled to recover, from each tenant permitted to install and maintain an air conditioner, the precise amount it pays to the utility company for furnishing necessary electrical service; or whether the landlord and the tenants who do not avail themselves of such service should be required to subsidize those that do. The patent inequity in the result reached below is that tenants with older and probably less energy efficient air conditioners now pay $29.87 per unit per year, while tenants with the most recent installations of more modern units pay $98 annually. This irrational solution to a wholly unexpected development was never contemplated by the rent adjustment structure of the Rent Stabilization Law and Code and should not be sustained. Respondent, in effect, conceded that the original charge, plus guidelines increases, does not compensate petitioner for the cost of furnishing electric current when it alleged $50 for the installation of a new unit in 1973 and $98 in 1974 and 1975. It nevertheless insists in perpetuating a reimbursement for the continuation of this service granted in prior years in an amount which bears no relationship whatsoever to its cost. Rather than afford tenants greater protection, I believe this type of illogical ruling will, in the long run, harm the very tenants respondent seeks to protect by deterring other builders from entering the field and making the New York City rental market truly competitive once again. Accordingly, I would reverse the judgment appealed from, grant the petition and remand the matter to respondent with directions to enter an appropri-

ate order requiring tenants who install and maintain air conditioners to pay such additional charges as are required to cover the cost of furnishing electrical service. [88 Misc 2d 1003.]