OPINION OF THE COURT
Leonard N. Cohen, J.
Petitioners, tenants of 30 Park Avenue, New York City, commenced this article 78 proceeding to annul the determination of the Conciliation and Appeals Board (CAB) which permitted, under certain enumerated conditions, the termination of manned passenger elevator services in the subject premises.
The following facts are undisputed. All 239 of the tenants residing in this building are protected by the Rent Stabilization Law and Code (hereinafter referred to as RSL and Code). This 20-story building located at 36th Street and Park Avenue is a full-service building, for which over the last 20 years the owner has provided two manned passenger elevators on a 24-hour daily basis and a manned service elevator on a more restricted basis. The elevators have always been fully automatic.
The 6 member CAB in a split decision, 4 to 2, granted the respondent (Flager Park Estates) owner’s application to *559 change the operation of the two manned passenger elevators to automatic operation under certain conditions which the majority found afforded the tenants “protective service equal to that which currently is provided” and which “will not constitute a diminution of services.” In effect the owner was permitted to eliminate six passenger elevator uniformed operators who, on, before and since May 31, 1968, serviced these two elevators on a 24-hour, 7-day a week basis.
The conditions of equivalent substituted protective services imposed by the CAB on the owner in exchange for its requested relief primarily related to additional 24-hour daily uniformed lobby attendants to supplement the continued services of a doorman, freight elevator manual operation and installation of certain new electronic and mechanical security equipment including passenger elevator key locks for only authorized persons using a special key for access to the basement.
Section YY51-6.0 (subd c, par [8]) of the Administrative Code of the City of New York requires members of the Rent Stabilization Association to maintain all services furnished by them as of May 31, 1968 in connection with the leasing of dwelling units. Subdivision (m) of section 2 of the Code of the Real Estate Industry Stabilization Association of New York City, Inc. (Code) defines required services as those services furnished or required to be provided on the base date (May 31, 1968) including, specifically, elevator service and protective services. Section 62 of the Code further provides that the requirements of the Code “shall not be evaded” by “modification of the services furnished or required to be furnished with the dwelling units, or otherwise.”
The issue herein is whether the CAB has the power to grant the termination of a base date required manned passenger elevator service in a fully rent-stabilized dwelling and substitute for such services what the CAB determines to be equivalent adequate services or whether such action by the CAB exceeds its lawful authority in view of its prior rulings and applicable law. This court will not inquire into whether the services ordered by the CAB are, *560 in fact, equivalent or whether the CAB acted in a rational and reasonable manner in this regard.
It is well established that the CAB has broad power under the RSL and Code to determine owner compliance with statutory obligations. (Matter of Sendar v Conciliation & Appeals Bd. of City of N.Y., NYLJ, Oct. 5, 1977, p 10, col 2, affd 65 AD2d 965.)
However, there is nothing in the RSL or Code which supports the adequate substitute test employed herein. This court is mindful of this judicial department’s recognition of the difference between the more “stringent” required services test of rent stabilization and the “less stringent” essential services test of rent control under unique “hybrid” and “peculiar circumstances.” (Matter of Vento v Prince, 73 AD2d 884, 885.) The existence of different standards create difficulty when a building’s occupancy is comprised of both rent-controlled and rent-stabilized tenants. Under such circumstances, courts have endeavored to impose substituted conditions upon the termination of a given service in order to ensure that rent-stabilized tenants are afforded equivalent services. (Matter of Walter & Samuels v New York City Conciliation & Appeals Bd., 63 AD2d 626; Ford v Housing & Dev. Admin., NYLJ, May 29, 1978, p 7, col 2, affd 67 AD2d 1110; Matter of Lefer & Turkel v Conciliation & Appeals Bd. [companion case 350 Assoc. Co. v Conciliation & Appeals Bd.], NYLJ, June 1, 1977, p 7, col 1, affd 61 AD2d 1143; Vento v Prince, 73 AD2d 884, supra.) An equitable balancing is necessary because of the special mixed or “hybrid” circumstances of such occupancy and applicable statutory law.
No such problem exists herein. All tenants are rent stabilized and all are entitled to the full protection of the RSL and Code, which has no provision for adequate substitute services. In this regard, it is noted that this is not an elevator conversion case. The passenger elevators in question are not in need of upgrading or refurbishing. They have always been completely automatic. The sole motivation herein is the diminution of the service employees in the building for the owner’s financial reasons. Until the administrative determination herein, the CAB has consistently and unequivocally stated that the RSL and Code *561 assures owners of the maintenance of their relative financial positions through periodic increases in rent upon the renewal of each lease. Where guideline increases are inadequate, the RSL and Code provide the owner with a remedy through a hardship increase. Accordingly, the CAB previously held that there is no economic basis under the Rent Stabilization Law for the elimination of required services. (Opn of Conciliation & Appeals Bd of City of NY, Nos. 7518, 7605; Opn of Conciliation & Appeals Bd of City of NY, No. 4710, Aug. 19, 1976, Barrera, chairman.) Significantly, the owner here has not applied to the CAB for a hardship increase as permitted under rent stabilization.
Relevantly, the CAB has previously determined that the “conversion of one or more shifts of a manually operated passenger elevator to self-service after the base date for services in a stabilized building is inconsistent with the requirements of the Rent Stabilization Law.” (Opn of Conciliation & Appeals Bd of NY, No. 4351, May 13, 1976, Prince, chairman, citing Opn of Conciliation & Appeals Bd of City of NY, No. 1504, Aug. 19,1971, Gribetz, chairman; Insjarl Realty Co. v Conciliation & Appeals Bd., NYLJ, June 1, 1972, p 18, col 4; Opn of Conciliation & Appeals Bd of NY, No. 2852, affd Sommers v Prince, NYLJ, March 4, 1975, p 13, col 3, app dsmd 55 AD2d 535.) These rulings of the CAB, and as affirmed by the courts, have consistently held that the elimination of manual elevator service is an ipso facto forbidden modification or diminution of such required services existing as of the base date in a rent-stabilized building. This court finds that the contrary CAB determination in this case is arbitrary and a clear error of law. There is no justification in the RSL or Code or under law for the unexplained use by the CAB of a substituted equivalent services test in a fully rent-stabilized building. Accordingly, the unjustified departure from the prior holdings of the CAB and this court is a clear error in law and therefore in excess of the CAB’s authority.
Accordingly, the petition is granted and the prior determination of the respondent CAB is annulled and vacated and this matter is remanded to the respondent CAB for further determination in accordance with this decision.