■ In the Matter of SARAH KOREIN, Appellant, v CONCILIATION AND APPEALS BOARD OF THE CITY OF NEW YORK et al., Respondents, and ELLIS P. EISENSTEIN et al., Intervenors-Respondents. — Order and judgment (one paper), Supreme Court, New York County (Stadtmauer, J.), entered March 5, 1980, dismissing petitioner's CPLR article 78 petition, affirmed, without costs or disbursements. Petitioner owns a luxury Park Avenue apartment building which is subject to the Rent Stabilization Law. Respondent Conciliation and Appeals Board determined, on the basis of uncontroverted testimony, that the owner had provided 24-hour manned elevator service on the statutory lease date, May 31, 1968. In 1973, petitioner eliminated this service without consulting the tenants or making application to the board. After complaints by the tenants, the board directed petitioner to restore the manned elevator service. Petitioner complied until 1976 when she again ceased the service. After notification that petitioner had terminated the service the board urged petitioner, in writing, to restore the service, and warned of the imposition of sanctions for noncompliance. Despite the warning, petitioner did not restore 24-hour manned elevator service but, instead, attempted to justify her actions by alleging that the installation of mechanical security devices adequately compensated for the loss of the elevator operators. After a full hearing the board found, on the basis of undisputed evidence, that the installation of mechanical devices did not compensate for the loss of building security previously provided by the physical presence of the elevator operators, and that a doorman (theretofore in attendance on a 24-hour per day basis) could not possibly perform all of the duties, and, in particular, security-related functions, previously performed by the elevator operators. Accordingly, the board found that the owner's termination of 24-hour manned elevator service had resulted in an unlawful diminution of required services and directed petitioner to restore the service in full. The law is well settled that "[t]he question of what constitutes a required service presents a factual issue which is to be determined by the respondent administrative agency." *(Fresh Meadows Assoc. v Conciliation & Appeals Bd.,* 88 Misc 2d 1003, 1004, affd 55 AD2d 559, affd 42 NY2d 925.) Although the board's directive to restore 24-hour manned elevator service does not refer to the substitution of mechanical security devices, but only to the violation of its prior order, the board did consider "the entire record", including the testimony of petitioner's witnesses, before determining that, in fact, a reduction in

services had occurred. In any event, it has been held that manned elevator service is a required service which the landlord may not unlawfully reduce or eliminate. *(Kaplan v Prince,* NYLJ, May 19, 1978, p 7, col 1, affd 67 AD2d 1110, mot for lv to app den 47 NY2d 707.) A determination that the elimination of manned elevator service by unilateral act of the owner, coupled with *continuation* of 24-hour doorman service and provision of mechanical security devices, constituted a reduction in required services in contravention of the Rent Stabilization Law was upheld in *Sommer v Prince* (NYLJ, March 4, 1975, p 13, col 3, affd 55 AD2d 535, mot for lv to app den 42 NY2d 801). Interestingly, there, as here, the owner argued that the building could not sustain the expense of elevator operators and submitted the barest of proof in the nature of a one-page statement of the operating position of the building. Here, although requested to do so, the owner failed to provide the board with either her payroll records for all building personnel or any other evidence establishing the number and work classification of her personnel. Concur — Sullivan, Carro and Lupiano, JJ.

Murphy, P. J., and Kupferman, J., dissent in a memorandum by Murphy, P. J., as follows: Upon the base date of May 31, 1968 (Code of the Real Estate Industry Stabilization Assn. of N. Y. City, Inc. [Code], § 2, subd [m]; § 62), this rent-stabilized building had elevator operators on a seven-day, 24-hour basis. In 1973, the owner discontinued that service without consulting the tenants or making an application to the Conciliation and Appeals Board (CAB). In opinion No. 2407, dated July 5, 1973, the CAB found that the manned elevator service was a "required service" (Code, § 2, subd [m]) and it directed the owner to restore such service. The owner restored that service until 1976 when a complaint was again filed because the service was discontinued. A hearing was held before the CAB on May 26, 1976. In opinion No. 9562, dated March 15, 1979, the CAB found a violation of opinion No. 2407 and it directed a restoration of manned service to the May 31, 1968 level. It also fined the owner the sum of $750 and it reduced all stabilized rents to the level in effect prior to the most recent guidelines increase. Special Term found that the CAB's determination in opinion No. 9562 was not arbitrary and had a rational basis. At the outset, it should be stressed that, as a matter of orderly procedure, the owner should have applied to the CAB in 1976 if it wished to convert to automatic service. The owner merely ignored the CAB's prior directive in opinion No. 2407 and instituted automatic service. Nonetheless, the CAB did not choose in 1976 to dispose of this breach of its prior order by simply and expeditiously pointing to the existence of that prior order, and by ruling in favor of the tenants on that point. Instead, the CAB had a full hearing on this dispute, and in the ensuing three years it permitted the parties to submit additional documentation in support of the positions. Since the CAB, in effect, treated the dispute upon the merits, this court should take the same approach in evaluating whether any error is reflected in the agency's determination. At the plenary hearing, the owner showed that this building, located at 715 Park Avenue, is in one of the most exclusive sections of Manhattan. There are approximately 77 tenants in the building. The rents ranged from $250 to $1,000 per month with $350 being the average rental. The owner's representative stated that there was a negative cash flow of $120,000 per year for the building and that substantial savings could be made if the elevator operators' salaries were eliminated through the use of automated elevators. The owner also submitted a one-page financial statement for the year ending December 31, 1975. That statement indicated a total operating profit for the building of $102,837.62. However, the total debt service for the year was listed at $186,584.76. The deficit between the total debt service and the total operating profit was $83,747.42. The owner's attorney stated that a comparative hard-

ship application had been considered by his client but that the relief afforded thereby was inadequate. The owner's representative also testified to the fact that various security devices had recently been installed; these devices purportedly permitted the doormen to maintain proper security without the presence of an elevator operator. Parenthetically, it should be observed that no issue was raised at the hearing as to a diminution in doorman service. In opinion No. 9562, now under review, the CAB did not comment on the sufficiency of the security devices. The CAB did mention the owner's claim that it was operating the building at a cash flow loss of approximately $120,000 per year but was silent as to the validity of that claim. The recent decision in *Matter of Smith v Popolizio* (108 Misc 2d 558) is relevant to this discussion. In that proceeding, a four-member majority of the CAB permitted an owner of a rent-stabilized building to convert from manned to unmanned service. The conversion was allowed upon conditions which afforded the tenants "'protective service equal to that which currently is provided'" and which "'will not constitute a diminution of services'" *(supra,* p 559). Special Term, however, granted tenants' petition to annul the CAB's determination on the ground that manned elevator service was a "required service" that could not be eliminated. It is for the CAB to determine what is a "required service" under subdivision (m) of section 2 of the Code *(Fresh Meadows Assoc. v Conciliation & Appeals Bd.,* 88 Misc 2d 1003, 1004, affd 55 AD2d 559, affd 42 NY2d 925). In determining what is a "required service", the CAB must be given reasonable administrative discretion in deciding whether the substituted performance supplied by an owner is adequate. In deciding that question, the CAB may reasonably permit an owner to provide the same basic service in a more efficient or more economical manner or both. For example, the tenants did not challenge the portion of opinion No. 9562 as found that there was no diminution in porter service although the actual number of porters had decreased over the years. Similarly, contrary to the conclusion reached in *Matter of Smith v Popolizio (supra),* the CAB should be given leeway to decide whether the "required" elevator service may be given in a different form that does not result in the diminution of service. The security devices in this proceeding were installed after the CAB's opinion No. 2407 was issued. Therefore, the CAB should have considered the possibility that those newly installed devices provided adequate substitute service as it found in *Matter of Smith v Popolizio (supra).* Moreover, in deciding whether to permit a conversion to automated service, the CAB should give some consideration to an owner's financial position. While an owner's financial status is not the sole or even the determinative factor to be considered, it may, in a marginal case, be the decisive element. In this proceeding, there was (i) testimony from the owner's representative and (ii) a statement suggesting that the building was being operated at a deficit. It should be emphasized that the tenants did not submit any proof to the contrary. It may well be that there is no merit to the owner's claim of a "negative cash flow" for the building. It is not for this court to evaluate the accuracy of the owner's contention in that regard. It was for the CAB to accept or reject this claim. As was mentioned above, the CAB did not even address this point. The majority stresses the fact that the owner did not submit its payroll records or any other evidence establishing the number and work classification of its personnel. From my reading of the record and the return, it would seem that the personnel records were requested primarily to resolve those issues before the CAB relating to the purported reduction in the porter and handyman service. Concededly, those records would be relevant to any thorough consideration by the CAB that the building was being operated at a loss. However, there is no indication that the CAB even considered the owner's claim as to a "negative cash flow". If the CAB rejected the owner's

claim on this point, it should have stated its reasons for such a rejection. In the absence of any stated reasons for its determination on this point, it is impossible for this court to decide whether the CAB acted reasonably under the circumstances. Summarizing, the CAB was arbitrary and capricious insofar as it failed to consider whether the new security devices permitted the owner to discontinue manned service without effectively diminishing elevator service or security. The CAB, in resolving that prime question, should have also considered, as a surrounding element, the owner's claim of a negative cash flow. For these reasons, the order and judgment of the Supreme Court, New York County (Stadtmauer, J.) should be reversed, and the matter remanded to the CAB for further proceedings consistent herewith.