■ In the Matter of VR EQUITIES, Appellant, v NEW YORK CITY CONCILIATION AND APPEALS BOARD, Respondent.—Judgment of the Supreme Court, New York County (Robert E. White, J.), entered September 10, 1984, which denied and dismissed petitioner's CPLR article 78 petition, challenging respondent's determination which fixed the lawful stabilized rent of apartment 5A at 136 West 75th Street as $282.22 per month as of April 1978, and directed the owner to roll back the rent and make a refund of the overcharges, is reversed, on the law, the petition to annul the determination is granted and the matter remanded to respondent for a new determination, without costs.

By lease commencing April 15, 1978, Daniel Breheny became the tenant of an apartment on West 75th Street at a rental of $475 per month. Petitioner VR Equities became the new owner of the property on October 3, 1979. Breheny later executed a two-year renewal lease for the term April 15, 1980 to April 14, 1982, at a rental of $476 per month and a three-year renewal for the April 15, 1982 to April 14, 1985 period at a rental of $552.16. In October of 1980, Breheny, who was active in the building's tenants' association, distributed rent overcharge forms to other tenants in the building. However, he waited until February 25, 1983 to file a rent overcharge complaint with the Conciliation and Appeals Board (CAB), alleging only that he was paying the highest rent in the building. Breheny's apartment, however, was the largest in the building. The timing of the overcharge complaint coincided with that of an agreement for a cooperative conversion plan, under which the tenants could purchase their apartments at prices below market value.

By mailing of March 9, 1983, VR Equities was served with an administrative complaint from the CAB regarding the alleged overcharge. The complaint included a demand for copies of all leases entered into by the owners and any tenants who had been in occupancy of the subject apartment since the applicable base date. May 31, 1968 was the applicable base date for an apartment, which had continuously been subject to the Rent Stabilization Law. The base date for an apartment which became stabilized as a result of the Emergency Tenant Protection Act (L 1974, ch 576, § 4) was the latter of two dates: June 30, 1974, or the date on which the last rent-controlled

tenant vacated the apartment. If any gaps existed in the submission of leases, the owner was required to submit rent ledgers or current rent rolls. The complaint advised petitioner owner that he would be in default and the building could be expelled from the Rent Stabilization Association if he failed to comply with these demands in 30 days.

The owner obtained a 10-day extension to April 19, 1983. By letter dated April 14, 1983, the owner explained to the Board that as of then he was unable to obtain the leases of the apartment's prior tenants from the previous owner, who had been retired for some time, and he requested that he be permitted to submit any prior leases or other relevant information when he obtained it. This letter received no reply.

A staff member of CAB then proceeded to contact the lower Manhattan District Rent Office and learned that there was no statutory report on file stating the date of decontrol of this apartment and that the last officially established rent for the apartment was the 1972 maximum base rent (MBR) of $229.17 per month. However, this information, which appears to have been obtained through a telephone conversation, is not contained in the record. On the basis of this information, the Board rendered an opinion, dated June 9, 1983 and issued June 15, 1983, in which it found that the owner had defaulted in providing a full rental history. However, rather than expel the owner from the Rent Stabilization Association as to the entire building, it exercised its right to establish a new stabilization base rent for the apartment. For these purposes, it was assumed that the apartment was decontrolled prior to June 1, 1974. Then, the 1972 MBR of $229.17 was increased by 8.5% to $248.65 to arrive at the assumed 1974 MBR for the period 1974 to 1975. A further adjustment upward resulted in a 1978 MBR of $282.72. This was the figure applied to Breheny's first two-year lease. Thereafter an MBR of $316 was arrived at for the period 1980 to 1981, $324 for the period 1981 to 1982 and $366 for the period 1982 to 1985. The order directed that the rent be rolled back accordingly, entitling Breheny to a refund of $13,872.

By letter dated June 24, 1983, the owner requested that CAB reopen the matter to allow it to submit rent records it was endeavoring to obtain from the prior owner. The Board denied the request on July 8, 1983. By letter dated July 11, 1983, the owner submitted certified copies of the maximum base rent master building rent schedules for the years 1976 to 1979, which had been filed in the Office of Rent Control. The

records demonstrated that the subject apartment was, prior to Breheny's occupancy in 1978, occupied by a statutory rent-controlled tenant and that the MBR in 1978 was $330.65. Since the apartment had been subject to rent control, no prior leases existed. The Board, nevertheless, denied the owner's request for reconsideration.

Petitioner then timely commenced this article 78 petition, dated October 4, 1983, challenging the alleged arbitrary and capricious determination of the base rent and CAB's decision not to reopen the proceeding despite newly submitted information. The court below dismissed the petition, finding that the rent determination was rationally based and that the information submitted on July 11, 1983 was "unverified and of questionable accuracy" and did not justify a reconsideration of the matter.

An agency determination is not to be disturbed unless that determination is contrary to lawful procedure or is arbitrary and capricious and constitutes an abuse of discretion. *(Matter of Pell v Board of Educ.,* 34 NY2d 222, 231-232.) An agency's action is arbitrary when it "is without sound basis in reason and is generally taken without regard to the facts." *(Supra,* at p 231.)* We conclude that the CAB made its determination in an arbitrary and capricious manner, without regard to the facts which should have been a part of its determination.

When the CAB exercised its discretion not to expel the owner from the Rent Stabilization Association and decided instead to establish a new base rent, it had the obligation to do so lawfully, with due regard to the essential evidence and in a nonarbitrary fashion. Yet, the manner in which the Board proceeded to establish the new base rent was haphazard, careless and manifested a concern only for expediency rather than the soundness of the result.

The information used to arrive at the base rent for this apartment was obtained from an informal telephone call to the Office of Rent Control from which the Board learned that the last officially recorded rent for the apartment was the 1972 maximum base rent of $229.17. The Board then assumed that the apartment became subject to regulation under the Rent Stabilization Law on July 1, 1974, the date the Emergency Tenant Protection Act took effect, and then updated the maximum base rent using applicable guideline increases.

However, had the CAB been thorough enough to at least inspect the filings on hand at the Office of Rent Control, it

would have discovered the certified copies of the maximum base rent master building rent schedules for the years 1976 to 1979, the same information the owner eventually submitted upon its motion for reconsideration. Contrary to respondent's argument that this material is dehors the record, the material was cited in respondent's own brief as part of its administrative return and was not presented for the very first time on this article 78 proceeding. *(Cf. Matter of Fanelli v New York City Conciliation & Appeals Bd.,* 90 AD2d 756, 757, *affd* 58 NY2d 952.)* In fact, it is the information on which CAB relied that is not in the record.

The information in these filings, moreover, provides strong evidence that the owner did not truly default in providing the rental history of this apartment. The Board's complaint demanded that the owner provide the rental history for the subject apartment subsequent to the applicable base date. The base date applicable here was the date on which the last rent-controlled tenant vacated the apartment, which was when the instant complainant commenced his tenancy. Thus, the rental history the owner was required to provide actually began with Breheny's lease. This rental history was already before the Board. Further, because Breheny was the first rent-stabilized tenant by reason of the vacating of the premises by the prior rent-controlled tenant, his rent could lawfully be set at the fair market level. (Rent Stabilization Law of 1969 [Administrative Code of City of New York] § YY51-6.0.2.) Therefore, this action should have been treated as a tenant fair market adjustment proceeding applicable to a first rent-stabilized tenant. The fact that no report of statutory decontrol was ever filed and that the tenant herein was not notified of the fact that he was the first rent-stabilized tenant are matters that were never raised in the administrative proceeding.

Unfortunately for petitioner, it was not the building's owner at the time Breheny commenced his lease and, for whatever reason, was never aware that the apartment had been rent controlled up to the time Breheny leased the premises. Nevertheless, the owner embarked upon a search for a prior rental history that was not required after all and for prior leases that did not exist. All that had to be shown was that the apartment was decontrolled in 1978 and Breheny was the first stabilized tenant, a fact which the 1976-1979 rent schedules strongly demonstrated. Having decided to make its own record and its own determination of a new base rent, the Board was obliged to act in a careful or prudent fashion. Had it done so,

it would have obtained these schedules which would properly change the character of the proceeding from an overcharge proceeding to a fair market adjustment proceeding.

Respondent's argument that the information in these filings is "unverified" because they were prepared and filed by the prior owner should be dismissed out of hand. That argument overlooks the fact, which even respondent recognizes, that the Rent Stabilization Law establishes a self-regulating, self-policing system which gives the *owner* the responsibility of calculating the lawful rent and maintaining the necessary records. This is true even as to the 1972 MBR information upon which respondent relied in making its decision. The Board fails to explain in any rational manner how it could rely on the 1972 filing without also relying on the later filings.

Moreover, the authenticity of the 1976-1979 MBR filings was established by the District Director's certification. Their accuracy is indicated by the information therein that the 1975 MBR for the subject apartment was $248.65, precisely the same figure that the Board utilized as the applicable base rent for 1974-1975. The Board's refusal to credit the information as reliable is arbitrary and capricious as was its negligence in not producing this information in the first instance. For all these reasons, the judgment below is reversed and the petition granted to the extent of annulling the Board's determination and remanding the matter for a new determination by the Board's successor, the State Division of Housing and Community Renewal. Concur—Sullivan, J. P., Carro, Kassal and Rosenberger, JJ.

Asch, J., dissents in a memorandum as follows: I would affirm the order of Special Term dismissing this CPLR article 78 petition. The opinion of the New York City Conciliation and Appeals Board (CAB) in determining rent for the subject apartment was supported by a rational basis and was not arbitrary or capricious.

The Code of the Rent Stabilization Association of New York City, Inc. (Code) § 42 (A) expressly provides that the owner has the affirmative duty to maintain all prior leases to the apartment and to produce them upon demand. In this regard, Code § 42 (A) (2) provides as follows: "(2) It shall be the duty of an owner to retain all leases described in paragraph 1 of this subdivision and to produce them on demand of the Association, the CAB, the Housing and Development Administration or new purchasers for as long as the Rent Stabilization Law or any extension thereof is in effect for such dwelling unit."

Not only was the owner required to produce complete rental history data upon demand by the Board, but the owner was also required to take affirmative steps to inform the tenants of the rental histories of their apartments. Rent Stabilization Code § 42 (A) requires that every owner, without exception, must include in every vacancy lease a rider which sets forth the complete rental history of the apartment and informs the tenant that he has the right to examine the prior leases to the apartment.

The owner in this case failed to comply with either the obligation to produce a rental history upon the Board's demand or the obligation to permit the tenant to examine the documentation which would establish the basis for the rent being charged. In fact, as the tenant's complaint specifically alleged, the owner refused to make the documentation available to the tenant. Then, when the Board served its written demand for the rental history, the owner simply asserted that the documentation was in the possession of a prior owner who had retired and was unavailable. The owner claimed it was unable to produce any documentation whatsoever despite the owner's clear obligation under the Rent Stabilization Code to have on hand and produce upon demand the documentation to prove the legality of the rent being charged.

The courts have consistently held, however, that an owner is not excused from its obligation to document the legality of the rents it is charging simply because it failed to obtain that documentation from the prior owner. (See, *Matter of 61 Jane St. Assoc. v New York City Conciliation & Appeals Bd.,* 65 NY2d 898, *affg* 108 AD2d 636.)

In the instant case, the Board could well have chosen to expel the owner from participation in the rent stabilization system for its default in complying with its obligation to produce the documentation to establish the legality of the rent it was charging. Instead, in its discretion, the Board chose to establish the lawful stabilized rent for the apartment of the complaining tenant by using an alternative procedure. The use of such alternative procedures has been upheld by the Court of Appeals *(see, Matter of 61 Jane St. Assoc. v New York City Conciliation & Appeals Bd., supra).*

Applying its alternative procedures in the instant case, the Board obtained from the Office of Rent Control the last officially recorded rent for the apartment, which in this case was the 1972 maximum base rent. Since the owner had

provided no information as to when the apartment became subject to regulation under the Rent Stabilization Law, the Board presumed that it became subject to regulation on July 1, 1974, the date the Emergency Tenant Protection Act took effect. The 1972 maximum base rent was then updated to July 1, 1974 by the Board, which then added thereto the applicable guideline increases for leases subsequent to that date. In this case, because of the owner's default, the only leases of record were those provided by the tenant. Therefore, the Board established the lawful rent by utilizing the only information available, which was the maximum base rent provided by the Office of Rent Control and the leases provided by the tenant himself.

It is well settled that an order of the Board is entitled to confirmation if it has a rational basis in the record adduced during the course of the administrative proceeding and it is in accord with applicable law *(Fresh Meadows Assoc. v Conciliation & Appeals Bd.,* 88 Misc 2d 1003, *affd* 55 AD2d 559, *affd* 42 NY2d 925). In the instant case, as in *Matter of 61 Jane St. Assoc. (supra),* the owner defaulted in its obligation under the Rent Stabilization Law by failing during the course of the four-month-long administrative proceeding to produce a shred of documentation to establish that the rent being charged was lawful.

The owner even now does not argue that the Board order lacked a rational basis in the record. Instead, the owner asserts that it was error for the Board to refuse to reopen the administrative proceeding on the basis of information which was not even in the record when the Board rendered its final determination. The record shows that the owner was afforded ample opportunity during the course of the Board proceeding to obtain and submit whatever information the owner chose. Despite this opportunity, the owner failed to produce that documentation.

Then, after the Board rendered its final determination based upon the record before it, the owner requested reconsideration on the sole ground that the owner expected to obtain rental documentation from the prior owner "shortly". But, there was no cognizable ground for the Board to grant reconsideration. Reconsideration by the Board is not a de novo administrative proceeding. The function of the Board's reconsideration procedure is to permit the Board to review its own orders to correct any errors made by the Board. The reconsideration procedure

does not exist to permit a party to introduce new evidence or raise new arguments.

Furthermore, what the owner did submit after the final administrative determination was rendered were documents which on their faces were insufficient and would not have changed the result. Those documents upon which the owner relied were rent schedules prepared by the *prior owner,* who filed them with the Office of Rent Control. Each schedule bears the following notation: "The acceptance of a registration statement or other filed document and the certification of its existence is not a certification of any of the facts contained therein."

However, even if that documentation were verified, it would not have constituted competent proof of the fact the owner sought to establish. The owner and the majority herein are of the opinion that the complaining tenant was the first rent-stabilized tenant to occupy the apartment after vacancy decontrol. But, contrary to this opinion, competent proof of vacancy decontrol would be the required statutory report of decontrol. The statutory report of decontrol is a document which was never submitted during the course of the Board proceeding. Indeed, not once during the course of the Board proceeding did the owner assert or ever suggest that the apartment had been decontrolled, let alone offer competent proof to that effect. In fact, this owner, who had the obligation to maintain the documentation to prove that the rent being charged was lawful, did not even know when the apartment became subject to regulation under the Rent Stabilization Law.

In addition, even assuming, arguendo, that the untimely submission of the owner had some probative value, that submission is dehors the record of the administrative proceeding upon which the Board based its determination. For that reason, it may not be considered by a court during a subsequent article 78 proceeding. The scope of judicial review is limited to the record before the Board at the time the Board rendered its determination. "The function of the court upon an application for relief under CPLR article 78 is to determine, upon the proof before the administrative agency, whether the determination had a rational basis in the record or was arbitrary and capricious. Disposition of the proceeding is limited to the facts and record adduced before the agency when the administrative determination was rendered (see *Matter of Levine v New York State Liq. Auth.,* 23 NY2d 863)."

*(Matter of Fanelli v New York City Conciliation & Appeals Bd.,* 90 AD2d 756, 757, *affd for reasons stated below* 58 NY2d 952.)

Moreover, because of their own lack of action, neither the current owner nor the prior owner could claim that the present tenant was the first rent-stabilized tenant to occupy the apartment. The first rent-stabilized tenant to occupy an apartment is required to be given notice of that fact and of his or her right to challenge the initial stabilized rent for the apartment. An owner must serve that notice on the tenant by certified mail within 30 days after the tenant takes occupancy (Rent Stabilization Code § 26). There is no record that any such notice was served on the tenant in this case. The absence of such notice or even an allegation that it was served leads to the conclusion that the tenant in this case was not the first rent-stabilized tenant to occupy the apartment, despite the owner's belated and unproven claim to the contrary.

It is "black-letter law" that the court should not substitute its discretion for that of the administrative agency which has the expertise in its field, as long as the agency exercises its discretion in a rational manner. The record is clear that the CAB's determination herein was clearly supported by a rational basis and was neither arbitrary nor capricious.