■ In the Matter of ANF COMPANY, Respondent, v DIVISION OF HOUSING AND COMMUNITY RENEWAL, Appellant.—Order, Supreme Court, New York County (Martin Evans, J.), entered October 3, 1990, granting reargument of a prior order and judgment (one paper) of the same court and Justice, entered August 6, 1990, which granted the petitioner's application to annul respondent's determination denying a rent restoration to the extent of remanding the matter to respondent to determine the amount of rent to be restored and, upon reargument, adhering to the prior determination, unanimously reversed, on the law, without costs or disbursements, and the petition dismissed. The Clerk is directed to enter judgment in favor of respondent-appellant dismissing the petition. Appeal from the order of the same court and Justice, entered August 6, 1990, dismissed as superseded by the appeal from the order entered October 3, 1990, without costs or disbursements.

As a result of the filing of a complaint, respondent Division of Housing and Community Renewal's (DHCR) District Rent Administrator reduced the rent-stabilized tenant's rent "to the level in effect prior to the last rent guideline increase", effective February 1, 1985, "the first rent payment day after DHCR informed the owner/landlord of the tenant's complaint." The reduction was based on the following findings: 1) apartment door bell removed; 2) master bedroom window in need of repair; 3) north bedroom ceiling repaired in unworkmanlike manner; and 4) entire refrigerator in need of repair. The order provided that the rent could be restored upon the landlord's submission of an "Affirmation of Compliance", to be filed within 30 days and that any rent above the level provided therein could not be collected without another DHCR order restoring the rent. Although the conditions cited in the reduction order were corrected by September 16, 1986, the landlord, due to oversight, did not apply for a rent restoration order until July 18, 1988, almost two years later. The District Rent Administrator denied the application, finding, on the basis of inspections made on December 13, 1988 and February 10, 1989, that, while the door bell, bedroom window and refrigerator had been replaced, the "[m]aster bedroom ceiling was repaired in an unworkmanlike manner which displays blisters and water stains." The landlord's petition for administrative review, based, *inter alia,* on the staleness of the inspections conducted nearly three years after the repairs had

been made, was denied, the DHCR finding the tenant's consent to the rent restoration invalid and the leak in the master bedroom ceiling to be a recurring one. The DHCR ordered that there should be no restoration of rent "[u]ntil [the] underlying defect is cured."

The landlord thereafter commenced this proceeding challenging the determination, citing the tenant's consent and prior DHCR rulings allegedly holding that a recurring leak does not justify the continuance of a rent reduction. The IAS court remanded the matter to DHCR "to determine the extent to which the rent should be restored based upon the correction of 3 of the 4 conditions." The DHCR moved for reargument, urging that pursuant to the Rent Stabilization Law (Administrative Code of City of New York § 26-514), as judicially construed (see, Matter of Hyde Park Gardens v State of N. Y., Div. of Hous. & Community Renewal, 140 AD2d 351, affd 73 NY2d 998), after a finding of failure to maintain a required service, it has "no alternative but to reduce the rent" by the full amount of the most recent guideline increase. The IAS court granted reargument but adhered to its original decision. This appeal followed. We reverse.

Insofar as is relevant, Administrative Code § 26-514 provides: "In addition to any other remedy afforded by law, any tenant may apply to the state division of housing and community renewal, for a reduction in the rent to the level in effect prior to its most recent adjustment and for an order requiring services to be maintained as provided in this section, and the commissioner *shall so reduce* the rent if it is found that the owner has failed to maintain such services." (Emphasis added.)

In *Hyde Park (supra)* the rent-stabilized tenants sought a rent reduction for the landlord's removal, in the course of installing a new security system, of the apartment building's outer door locks. Although finding a diminution of a required service, the DHCR did not order a rent reduction because the landlord's efforts to install a substitute system were made in good faith. The Second Department, citing the aforementioned statutory language, held that the "determination not to order a rent reduction constituted an exercise of discretion which [the] agency did not possess based upon the mandatory nature of the language". (140 AD2d, *supra,* at 352-353.) The matter was remanded "for a computation of the appropriate amount" of the rent reduction. *(Supra,* at 352.)

The DHCR maintains that it has no discretion and must reduce the rent to the level in effect before the most recent

adjustment regardless of the cause or extent of the disruption in services. The landlord argues that the rent should be reduced in proportion to the extent and gravity of the reduced services, as is the case under the New York City Rent and Eviction Regulations. While the landlord's argument is beguiling, it is one more appropriately addressed to the Legislature. The statute is clear in its mandate and leaves no discretion in the imposition of a sanction to the monitoring agency or the courts. The provision for the mandatory reduction of rent is keyed not to the nature and quality of services being maintained but rather to a determination that services have been reduced. The determination that there has been a reduction in services is strictly for the administrative agency. (See, *Fresh Meadows Assocs. v Conciliation & Appeals Bd.*, 88 Misc 2d 1003, *affd* 55 AD2d 559, *affd* 42 NY2d 925.) The agency's denial of a partial restoration of the rent in this case is a correct application of section 26-514, which, with respect to restoration, provides, "The restoration of such services shall result in the prospective elimination of such sanctions." The restoration contemplated is not piecemeal compliance but a restoration of all reduced services.

Finally, it should be noted, the consequence of an owner's failure to maintain services to a rent-stabilized apartment, i.e., suspension of the most recent rent guideline increase, which is also set forth in 9 NYCRR 2523.4 (a), is directed toward implementing an important public policy and achieving a significant goal of the Rent Stabilization Law—the preservation and maintenance of New York City's housing stock. Concur—Murphy, P. J., Sullivan, Kassal and Smith, JJ.