In the Matter of Berkeley Kay Corp., Respondent-Appellant, v New York City Conciliation and Appeals Board, Appellant-Respondent.

First Department, December 3, 1985

## APPEARANCES OF COUNSEL

*Cullen S. McVoy* of counsel *(Edward Chazin,* attorney), for appellant-respondent.

*V. Pamela Davis* of counsel *(Lane Felcher Kurlander & Fox, P. C.,* attorneys), for respondent-appellant.

**OPINION OF THE COURT**

MILONAS, J.

Respondent-appellant New York State Division of Housing and Community Renewal, as successor to the New York City Conciliation and Appeals Board (CAB), appeals from a judgment of the Supreme Court, New York County, granting a petition brought pursuant to CPLR article 78 to the extent of annulling, in part, an order issued by the CAB. Petitioner-respondent Berkeley Kay Corp. cross-appeals from so much of the judgment which upheld the CAB's declassification of the Hotel Berkeley as a hotel and directed that Berkeley cancel its membership with the Metropolitan Hotel Industry Stabilization Association, Inc., enroll with the Rent Stabilization Association of New York City, Inc., and offer tenants one- and two-year leases.

Petitioner is the owner of the Hotel Berkeley, located at 170 West 74th Street in Manhattan, a residential building which is a member of the Metropolitan Hotel Industry Stabilization Association. Ninety-three of its units are subject to the Rent Stabilization Law. Administrative proceedings were initiated by 26 tenants of the Hotel Berkeley, who filed complaints challenging the building's status as a hotel. According to the tenants, the owner had been receiving the benefits of the rent stabilization rules for hotels, such as charging first rents on vacancy and collecting yearly hotel guidelines increases, while nonetheless failing to provide any hotel services. The tenants alleged that not only was the owner not furnishing mail service, furniture, linens and other such services, but that it had represented the building to them as an apartment house, offering them apartment rather than hotel leases. In that respect, copies of the leases submitted by the tenants indicated that the units were being rented unfurnished, without maid service, without linen service and without telephone switchboard service.

In its answer, Berkeley did not dispute the tenants' contention regarding the lack of hotel services. The owner merely asserted that the subject building was a hotel, that it was a member in good standing of the Metropolitan Hotel Industry Stabilization Association, that it followed the rules applicable to such buildings and that it had not represented any dwelling

unit as a rent-stabilized apartment. The CAB then endeavored to ascertain whether Berkeley was in compliance with the uniform standards which the agency had adopted for the purpose of determining whether a particular building was appropriately classified as a hotel. To that end, the CAB requested that the owner fill out a questionnaire stating whether on June 30, 1983, a minimum of 50% of the stabilized tenants in the subject premises were actually receiving maid and linen service and whether the owner was willing, within 90 days, to provide certain specified services. Berkeley's response to the first question was "no". The owner replied to the second query by asserting that if it were given additional compensation above the current rents, it would be willing to supply the enumerated hotel services.

Based upon the record before it, including the owner's admission that it was not furnishing hotel services to the tenants, the CAB rendered an opinion, dated January 26, 1984, in which it found that the building was improperly classified as a hotel. The agency rejected the owner's offer to restore services since it was conditioned upon a further rent increase. In the view of the CAB, the owner had been accepting the special benefits available under hotel stabilization without providing the required hotel services. Thereupon, the agency, pursuant to Administrative Code of City of New York § YY51-3.1 (as added by L 1983, ch 403, § 43, eff June 30, 1983), reclassified the building to apartment house status and directed that, as of the date of the CAB's order, all future rent increases be imposed in accordance with the guidelines applicable to apartment houses. Additionally, to "avoid a hardship for those tenants whose terms of rental currently include customary hotel services such as furniture, linen, and maid service, such tenants shall continue to receive the hotel services they now receive for the remainder of their tenancy." Thereafter, the CAB stated, the owner would be permitted "to discontinue hotel services prior to renting such unit(s) to the next tenant(s) at no adjustment in rent based on the elimination of hotel services."

Concluding that Berkeley had unlawfully charged hotel guidelines rents and first rents on vacancy during the period from July 1, 1982, the CAB imposed a rollback to the rent in effect on June 30, 1982. The agency noted that while prior to the amendment of the Hotel Code (Code of Metropolitan Hotel Industry Stabilization Association, Inc., enacted pursuant to Administrative Code of City of New York § YY51-6.1 [a], and

approved by City Housing and Development Administration, eff Oct. 10, 1969) in July of 1982, the owner might have argued that it met the definition of a hotel for stabilization purposes by having made hotel services available, it could no longer make such a claim. Under the revised Code, the CAB pointed out, the owner was mandated to actually provide customary hotel services in order to collect annual hotel guidelines increases and first rents. Berkeley was thus required to refund or credit any and all excess rent increases and security. Moreover, as the dwelling units in question would now be covered by the rules pertaining to apartment stabilization, the agency directed the owner to offer tenants renewal leases for one or two years, at the latter's option, which would run prospectively at the appropriate apartment increase above the rent actually charged and paid on June 30, 1982. The CAB then specifically held that the scope of its order applied not only to the apartments of the 26 complainants but to the entire premises.

In granting Berkeley's petition to the extent of setting aside that part of the CAB determination which rolled back the rents to those charged on June 30, 1982, Special Term decided that the administrative action had been based upon an improper retroactive reclassification of the building under Laws of 1982 (ch 403, § 43). According to the court, if what petitioner was doing before the enactment of section 43 was not improper at that time, no agency of government should penalize it because at a later date different standards or requirements were adopted. However, an examination of the record herein reveals that the CAB's order was not predicated on a retroactive finding that on June 30, 1982, the Berkeley was not a hotel. On the contrary, the agency determined that on June 30, 1982, the Berkeley was classified as a hotel and collected hotel guidelines increases but did not supply the necessary hotel services. Further, Special Term erred in its opinion that the owner was entitled to additional compensation for any extra services which it may be compelled to furnish. The administrative order did not direct the owner to provide any additional services. It merely found that the owner had received compensation for services which it was not, in fact, supplying.

Pursuant to both hotel and apartment stabilization, owners are permitted periodic increases in rent. In the case of hotels, owners may generally charge higher guideline increases and, until recently, were authorized to charge an unrestricted free

market rent upon vacancy. In exchange, they were required to provide a more extensive package of services than were owners of apartment buildings. Amended Code § 3 (p) defines "Required Services" as those services which were furnished or were required to be furnished, on May 31, 1968 or on the date of the initial commencement of the tenancy, whichever is later. In that connection, both the original Code § 2 (h) and the amended Code § 3 (h) set forth an array of services including maid service, furnishings, laundering of linen, telephone and bellboy service, secretarial or desk service and the use and maintenance of furniture and fixtures. However, while the original Code simply provided that the owner make hotel services available to the tenant, the new Code mandated the owner to actually provide those services. Therefore, as of the amendment of the Code on July 15, 1982, there could be no doubt that the owner, in order to collect annual hotel rent increases, was required to *actually* supply hotel services.

Amended Code § 33 empowers the CAB, upon the complaint of a tenant, to review the services being furnished and ascertain whether the owner was entitled to hotel guidelines increases, as well as to "adjust the stabilization rent where it determines such rent to be inconsistent with this Code" (§ 33 [g]). In the instant matter, Berkeley did not deny the tenants' allegations regarding its failure to provide services, nor did it advise the CAB what services were being supplied. Consequently, the agency properly found that the owner had not furnished the services mandated by the Code. Since the amended Code mandated the provision of certain enumerated hotel services as of July 15, 1982, the CAB appropriately adjusted the rents on a building-wide basis to those in effect on June 30, 1982, the date immediately prior thereto. In that respect, the law is well settled that an administrative determination will not be disturbed upon judicial review if it is supported by a rational basis and is in accord with applicable law. *(Fresh Meadows Assoc. v New York City Conciliation & Appeals Bd.,* 55 AD2d 559, *affd* 42 NY2d 925.)

The CAB's rollback of rents to the June 30, 1982 level was thus pursuant to authority which existed before the enactment of the Omnibus Housing Act of 1983 (L 1983, ch 403). The Omnibus Housing Act, on the other hand, expressly enabled the CAB and its successor, the Division of Housing and Community Renewal, to prospectively reclassify a particular building as a hotel or apartment house. *(See, Schick v Park Royal Assoc.,* 65 NY2d 1031.) This statute was intended as a

vehicle for combating precisely the sort of abuse evident in the situation before us—where the owner has declared its building to be a hotel, received all the benefits inherent therein and yet has not provided the required services. In reclassifying the Berkeley as a hotel, the CAB did not do so retroactively, but rather as of the date of its order. Any rent increases would thereafter be imposed under the guidelines applicable to apartment buildings.

Consequently, the judgment of the Supreme Court, New York County (Martin Evans, J.), entered on August 22, 1984, which granted the petition pursuant to CPLR article 78 to the extent of annulling, in part, an order of the Conciliation and Appeals Board, dated January 31, 1984, should be modified, on the law, to the extent of reversing that portion of the judgment granting the petition, dismissing the petition and otherwise affirmed, without costs or disbursements.

KUPFERMAN, J. P., SULLIVAN, CARRO and LYNCH, JJ., concur.

Judgment, Supreme Court, New York County, entered on August 22, 1984, unanimously modified, on the law, to the extent of reversing that portion of the judgment which granted the petition, dismissing the petition and otherwise affirmed, without costs and without disbursements.