■ In the Matter of ANSONIA ASSOCIATES, Respondent, v STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL, Appellant. In the Matter of THOMAS SOJA, Individually and as President of the Ansonia Tenants Coalition, Inc., Appellant, v NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL, Respondent. In the Matter of ANSONIA RESIDENTS' ASSOCIATION, Appellant, v NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL, Respondent.—Judgment, Supreme Court, New York County (Francis N. Pecora, J.), entered October 3, 1985, which, *inter alia,:* (1) granted the petition of Ansonia Associates, brought pursuant to CPLR article 78, to vacate and annul an order of respondent, New York State Division of Housing and Community Renewal (DHCR), dated January 17, 1985, which, *inter alia,* reduced the rents of residential tenants in a building owned by petitioner Ansonia Associates, based upon a DHCR finding that petitioner Ansonia Associates had failed to provide hotel services to those tenants, and remanded this petition to DHCR for further review not inconsistent with Special Term's memorandum decision in support of its judgment; and (2) dismissed the petitions of Thomas Soja, individually and as president of the Ansonia Tenants Coalition, Inc., and of the Ansonia Residents' Association, and both of those petitions having been brought pursuant to CPLR article 78 to challenge the same DHCR order, mentioned, *supra,* is unanimously modified, on the law, to the extent of reversing that part of the judgment which granted the petition of Ansonia Associates, and that petition is dismissed, and otherwise affirmed, without costs.

In these three consolidated proceedings the petitioners are: Ansonia Associates (landlord); Thomas Soja (Soja), individually and as president of the Ansonia Tenants Coalition, Inc. (ATC); and the Ansonia Residents' Association (ARA).

Since 1978, the landlord has owned the residential premises known as the Ansonia, located at 2109 Broadway, New York County. Soja is a tenant, and he also is the president of the ATC, which consists of approximately 200 tenants. ARA is another Ansonia tenants' association that is independent of the ATC, and ARA's membership is comprised of approximately 200 other tenants.

After purchasing the Ansonia, the landlord registered it

with the Metropolitan Hotel Industry Stabilization Association (METHISA) and, thereafter received the benefits of having the Ansonia classified as a hotel. These benefits included, *inter alia,* rent increases from tenants based upon the higher Hotel Code[1] guidelines rather than upon the lower Rent Stabilization (RS) Law guidelines which are applicable to residential apartment buildings. The Code of METHISA, in substance, required that hotels had to provide their tenants with services traditionally associated with hotel living.

In October 1983, allegedly as a result of a lack of hotel services and the improper classification of the Ansonia as a hotel, members of ARA began to withhold rent. Thereafter, in response, the landlord initiated various nonpayment proceedings in the Civil Court of the City of New York, and the respondent tenants counterclaimed for, *inter alia,* reclassification of the Ansonia from a hotel to an apartment building, and refund of alleged rent overcharges.

The other Ansonia tenants' association mentioned, *supra,* ATC on or about November 29, 1983, commenced a proceeding before the New York City Conciliation and Appeals Board (CAB) (Note: the CAB's responsibilities have since been assumed by the New York State Division of Housing and Community Renewal [DHCR]). ATC's complaint, *inter alia:* alleged that the landlord was not providing the tenants with certain hotel services, such as linens, furniture and maid service; challenged the landlord's enrollment in METHISA; and sought the reclassification of the Ansonia from a hotel to an apartment building, pursuant to the provisions of the RS Law and METHISA Code, and sought the adjustment of rents in accordance with a base date of May 31, 1968 and/or since the date that a tenant took occupancy, if later. In response to this ATC complaint, the landlord, on February 8, 1984, filed an application with the CAB, which sought a determination as to whether the Ansonia is or is not a hotel; and, on March 5, 1984, interposed an answer to ATC's complaint. In substance, the landlord's answer requested that its application for a determination of Ansonia's status be consolidated with ATC's complaint, and asserted that allegedly the regulations and standards promulgated by the CAB with respect to minimum hotel services do not conform with the statutory criteria set

---

1. Code of Metropolitan Hotel Industry Stabilization Association, Inc. (METHISA Code), enacted pursuant to Administrative Code of City of New York § YY51-6.1 (a), and approved by City Housing and Development Administration, eff Oct. 10, 1969.

forth in the RS Law and the METHISA Code, and, therefore, CAB allegedly had no authority to make a determination of Ansonia's status.

At the same time that some of its members were engaged in the Civil Court matter, mentioned, *supra,* ARA filed over 240 rent overcharge complaints with the CAB.

While these two tenant proceedings and one landlord proceeding were pending before the CAB, in February 1984, the respondent tenants involved in the Civil Court case moved for partial summary judgment concerning, *inter alia,* the issues of the reclassification of the Ansonia, deprivation of services, and rent overcharges. By order of the Civil Court, New York County (Ralph Waldo Sparks, Housing Court Judge), dated May 31, 1984, the tenants' motion for partial summary judgment was partially granted. In pertinent part, Civil Court determined, in *Ansonia Assoc. v Speratore* (index number 95988/83), that pursuant to the RS Law, and the concession of the landlord, the Ansonia was an apartment building and not a hotel; and judgment was reserved on the issues of the alleged denial of services and rent overcharges until DHCR made a determination as to them.

Subsequently, on August 13, 1984, the District Rent Administrator (DRA) issued order number CDR 00494, which disposed of the three proceedings. In pertinent part, this DRA order found that since July 15, 1982, when a landlord's obligation to provide customary hotel services[2] became mandatory under the amended Hotel Code,[3] landlord had failed to provide customary hotel services; found that those tenants, who had been deprived of these hotel services, had incurred a diminution of services; determined that, based upon these findings, *supra,* the landlord had forfeited the benefits provided under the amended Hotel Code; and, thereafter, directed: (1) the landlord to refund all Hotel Code guideline rent increases collected on or after July 1, 1982, and also to refund excess security, if any; (2) the landlord to continue to provide all services actually provided on June 30, 1982, and all services added thereafter *(see,* Code of the Rent Stabilization Association of New York City, Inc. [RS Code] § 62 [A]; § 2 [m]); (3) the landlord to offer the tenants renewal leases consistent

2. Customary hotel services have been defined by amended Hotel Code § 3 (h) as including: maid service, furnishing and laundering of linen, telephone and bellboy service, secretarial or desk service, and use and upkeep of furniture and fixtures.

3. L 1983, ch 403, § 43.

with the RS Code, since the DRA, pursuant to the authority of the Omnibus Housing Act of 1983 (L 1983, ch 403), reclassified the Ansonia from a hotel to an apartment house as of the date of the DRA order; (4) the renewal leases are to be for prospective terms and the rental therein is to be the rent actually charged and paid on June 30, 1982, plus lawful apartment guideline increases; and (5) the landlord is to register these stabilized housing accommodations with the DHCR, which registration is to include reference to the June 30, 1982 rents as well as services. Furthermore, by the terms of the DRA order, any tenants who currently receive customary hotel services will continue to receive them, but the landlord may discontinue such services prior to renting that unit to a succeeding tenant. In view of the fact that the DRA order was made applicable on a building-wide basis, the DRA ruled that the rental overcharge complaints of the tenants, mentioned, *supra,* had been rendered moot.

Following the issuance of this DRA order, in timely fashion, the landlord, as well as the two tenant organizations—ATC and ARA—filed petitions for administrative review of that order. In substance, the landlord contended that the order was arbitrary and capricious, and the tenants contended that the base rent date should have been determined to be a date earlier than June 30, 1982, which was the effective date on which amended Hotel Code § 3 (h) mandated a landlord had to provide hotel services. Moreover, the landlord requested the DHCR to stay the DRA order while the petitions for administrative review were being processed. Over the tenants' objection, DHCR stayed that part of the DRA order that dealt with the DRA's direction that the landlord credit or refund overcharges from July 1, 1982 to August 13, 1984, which was the date of the DRA order, upon condition that landlord place those funds in an escrow account.

On January 17, 1985, the DHCR issued its order and determination, which denied the petitions for administrative review of the landlord and the tenants. The Deputy Commissioner, who signed the DHCR order, explained that decision. In pertinent part, he stated, in denying the landlord's petition for administrative review, that it is undisputed that since June 30, 1982, the landlord has not met the requirements of amended Hotel Code § 3 (h), since the landlord has not provided minimum hotel services to all tenants; the landlord's failure to provide minimum hotel services constitutes an evasion of the amended Hotel Code, and, therefore, landlord is precluded from receiving the rental benefits of that Code;

pursuant to amended Hotel Code § 33 (g), DHCR, upon application of any tenant, may adjust the stabilized rent, if DHCR determines that rent to be inconsistent with the amended Hotel Code; based upon the facts and the legal authority, mentioned, *supra,* the DRA properly adjusted the rents as of June 30, 1982, which was the day prior to the time when the new Hotel Rent Guidelines Board order went into effect, as a result of the amended Hotel Code becoming effective on July 15, 1982; and the DRA, pursuant to Laws of 1983 (ch 403), was empowered to prospectively reclassify the Ansonia from a hotel to an apartment building.

Furthermore, in denying the tenants' two petitions for administrative review, the Deputy Commissioner stated, in substance, that the tenants' contention was meritless, that the DRA should have rolled the rents back to an earlier date, since the amended Hotel Code's definition of a hotel, mandating required hotel services, was not established until *July 15, 1982,* as mentioned, *supra;* and, therefore, the DRA properly determined that the rent adjustments be effective as of July 1, 1982. Also, the DHCR order noted that the tenants' contention relative to the diminution of services was not appropriate for consideration in the instant administrative appeal, since that issue was the subject of pending proceedings at the district rent level.

Moreover, the DHCR order noted that the tenants' individual complaints of rent overcharges were properly held to be moot by the DRA, upon the basis that these complaints were duplicative of the proceedings before the DRA, which resulted in the DRA order of August 13, 1984.

Thereafter, the landlord, as well as the two Ansonia tenant organizations, ATC and ARA, instituted proceedings, pursuant to CPLR article 78, for review of the DHCR order. These three petitions, in substance, all contend that DHCR erred when it adjusted the rents in the Ansonia to the levels in effect on June 30, 1982, based upon DHCR's finding that the landlord had not provided mandated hotel services. In particular, the petition of the landlord alleges that the DHCR order is arbitrary and capricious and constitutes a retroactive forfeiture by designating the date of June 30, 1982, since the DRA order, which changed the classification of the Ansonia from a hotel to an apartment building, did not become effective until August 13, 1984. Furthermore, in particular, the petitions of the tenants alleged that the DHCR order lacks a rational basis in designating the date of June 30, 1982, since DHCR should have rolled back rent levels to an earlier date, in view

of the alleged fact that prior to June 30, 1982, the landlord was not providing hotel services.

Special Term jointly considered the three positions, upon the basis that they are interrelated. While granting the petition of the landlord, Special Term denied the petitions of the tenants. In substance, Special Term held that DHCR lacked authority to roll back rents before the effective date of the reclassification of the Ansonia.

We disagree with Special Term insofar as it granted the petition of the landlord.

Based upon our review of the record, we find that even prior to the date of the Ansonia's reclassification, the CAB and the DHCR had the authority to remove hotel guideline rent increases, where the landlord failed to provide tenant with required hotel services in accordance with the amended Hotel Code.

Our unanimous decision in *Matter of Berkeley Kay Corp. v New York City Conciliation & Appeals Bd.* (113 AD2d 331 [1st Dept 1985]), is dispositive on this issue of date determination by DHCR. In the *Berkeley* case, we held that the CAB properly adjusted the rents in the Hotel Berkeley, to those in effect on June 30, 1982, since after the date the landlord had unlawfully charged hotel guideline rents, although the landlord was not providing hotel services, as required by the amended Hotel Code. We stated, in pertinent part *(supra,* p 335):

"Amended [Hotel] Code § 33 empowers the CAB, upon the complaint of a tenant, to review the services being furnished and ascertain whether the [landlord] was entitled to hotel guidelines increases, as well as to 'adjust the stabilization rent where it determines such rent to be inconsistent with this Code' (§ 33 [g]) * * * [T]he agency properly found that the [landlord] had not furnished the services mandated by the Code. Since the amended Code mandated the provision of certain enumerated hotel services as of July 15, 1982, the CAB appropriately adjusted the rents on a building-wide basis to those in effect on June 30, 1982, the date immediately prior thereto. In that respect, the law is well settled that an administrative determination will not be disturbed upon judicial review if it is supported by a rational basis and is in accord with applicable law. *(Fresh Meadows Assoc. v New York City Conciliation & Appeals Bd.,* 55 AD2d 559, *affd* 42 NY2d 925.)*

"The CAB's rollback of rents to the June 30, 1982 level was thus pursuant to authority which existed before the enact-

ment of the Omnibus Housing Act of 1983 (L 1983, ch 403). The Omnibus Housing Act, on the other hand, expressly enabled the CAB and its successor, [DHCR], to prospectively reclassify a particular building as a hotel or apartment house. *(See, Schick v Park Royal Assoc.,* 65 NY2d 1031.)"

Accordingly, we find that examination of the DRA and DHCR orders indicates that they contain two separate and distinct rulings, each based on its own separate and distinct statutory authority. While Laws of 1983 (ch 403) authorized the DRA to prospectively reclassify the Ansonia, based on the landlord's instant failure to provide hotel services, the RS Law and amended Hotel Code authorized the DRA to remove hotel rent guidelines, since the landlord had failed to provide hotel services. Thus, the DRA's adjustment of the Ansonia rents, as of June 30, 1982, was not based upon a finding that the Ansonia ceased to be a hotel during the period between June 30, 1982 and August 13, 1984. Rather, that adjustment was based upon the finding that the Ansonia continued to be a hotel during that period, but the landlord failed to provide the hotel services for which hotel rent increases had been improperly collected. Therefore, we hold that there was no retroactive reclassification of the Ansonia in contravention of the Omnibus Housing Act of 1983, mentioned, *supra.* The Ansonia retained its classification as a hotel until August 13, 1984, which was the date of the DRA order, when it was prospectively reclassified as an apartment building.

Moreover, we find that DHCR's order adjusting Ansonia's rents to the level in effect on June 30, 1982, rather than adjusting the tenants' rents to some earlier date, had a rational basis, in view of the fact that, prior to the amendment of the Hotel Code, there was no requirement that a landlord actually provide hotel services to the tenants.

Accordingly, we modify Special Term's judgment only to the extent of reversing that part of the judgment which granted the petition of the landlord, and dismiss that petition, and otherwise affirm. Concur—Murphy, P. J., Ross, Milonas, Kassal and Rosenberger, JJ.