OPINION OF THE COURT
Chief Judge Kaye.
This appeal asks us to determine whether Tier IV emergency *643 medical technicians and advanced emergency medical technicians (EMTs) who file for performance-of-duty disability retirement benefits pursuant to Retirement and Social Security Law § 607-b are entitled to review of their application by a Special Medical Committee pursuant to Retirement and Social Security Law § 605 (e). We conclude that they are not.
Petitioners are Tier IV EMTs who were injured on the job and whose applications for disability retirement benefits were reviewed—and denied—by the New York City Employees’ Retirement System (NYCERS) Medical Board for three-quarter disability retirement benefits under Retirement and Social Security Law § 607-b.[1] Petitioners then appealed the Medical Board’s determination to the Special Medical Committee made up of three independent doctors—pursuant to Retirement and Social Security Law § 605 (e)—who reversed the Board’s determination and approved petitioners’ three-quarter salary disability retirement benefits.
On May 8, 2002, NYCERS’ Deputy Director informed petitioners that, notwithstanding the Special Medical Committee’s determination, their benefits would be discontinued. The Deputy Director advised petitioners that
“there is no provision under the law that would allow a tier 4 EMS/EMT member of NYCERS whose application for disability retirement under Section 607-b of the RSSL is denied by the NYCERS’ Medical Board ... to seek redress through Final Medical Review under Section 605-e of the RSSL. . . .
Final Medical Review . . . is to be made available only to Tier 4 members who apply for disability retirement under the provisions of Section 605.”
Petitioners brought this CPLR article 78 proceeding claiming that John J. Murphy, as Executive Director of NYCERS, and *644 Michael Bloomberg, as Mayor of the City of New York (the City), unlawfully terminated their three-quarter disability retirement benefits and health insurance coverage after their applications had been approved by a Special Medical Committee. Supreme Court concluded that petitioners were entitled to the additional medical review, finding “ambiguity inherent in RSSL § 607-b.” In the court’s words, “[b]ecause RSSL § 607-b incorporates RSSL § 605 (c) by reference, and the procedures referred to therein were subsequently expanded by RSSL § 605 (e) to include medical review, resort should be made to interpretation beyond the words of the statute.”[2] The Appellate Division affirmed, noting that “Retirement and Social Security Law § 607-b is not a ‘stand-alone’ statute” (305 AD2d 237, 238 [1st Dept 2003]). We now reverse.
Discussion
Retirement and Social Security Law article 15 provides a comprehensive scheme of retirement benefits through which city employees may receive a pension upon retirement from service, after meeting specified age and length-of-service requirements (see e.g. Retirement and Social Security Law §§ 600— 604-h). Employees who are disabled while on the job, and are unable to perform their duties, may retire and receive benefits prior to meeting age and the statutory length-of-service requirements (see Retirement and Social Security Law §§ 605—607-d). At issue in this litigation are “Performance of duty disability retirement” benefits for EMTs, provided for as follows (Retirement and Social Security Law § 607-b [a]):
“Any member of the New York city employees’ retirement system who is employed by the city of New York ... in the position of [EMT] . . . who . . . becomes physically or mentally incapacitated for the performance of duties as the natural and proximate result of an injury, sustained in the per *645 formance or discharge of his or her duties shall be paid a performance of duty disability retirement allowance equal to three-quarters of final average salary, subject to the provisions of subdivision c of section six hundred five of this article and section 13-176 of the administrative code of the city of New York.”
Section 607-b was enacted in 1998 to rectify a “grossly unfair” and “serious inequity” that became apparent after the City’s Emergency Medical Service merged into the Fire Department Bureau of Emergency Medical Services (Mem of Assembly in Support, 1998 McKinney’s Session Laws of NY, at 1979, 1980). EMTs worked side-by-side with members of the Fire Department but received drastically different disability retirement benefits. “If a [paramedic or EMT] and a fire-fighter both suffer [ed] a serious disabling injury at the same emergency, the firefighter [could] receive a 75% pension for life. The [paramedic or EMT] receiv[ed] 18 months of disability wages and then face[d] termination if he/she [could not] return to work” {id. at 1980).[3] The law sought to “overcome[ ] this unfairness and recognize [ ] the strenuous and dangerous working conditions that New York City EMTs face” {id.). Thus, the statute was amended to add section 607-b to provide Tier IV EMTs with the enhanced benefit available to their firefighter counterparts.
Section 607-b expressly incorporates by reference section 605 (c), a general provision that sets forth the method by which NYCERS’ Medical Board may make determinations as to the initial entitlement to a disability retirement allowance. Section 605 (c) provides that “Each retirement system shall be entitled to adopt appropriate procedures for making the foregoing determination, including but not limited to the conducting of medical examinations, if any, for the purpose of determining initial entitlement of an applicant for disability retirement or to continued entitlement to a disability retirement allowance.”
Petitioners ask us to add another link between the sections of the statute. They contend that because section 607-b expressly incorporates section 605 (c), and because the procedures *646 referenced in section 605 (c) were subsequently expanded by Retirement and Social Security Law § 605 (e) to include an additional layer of medical review, section 605 (e) benefits should also apply to performance-of-duty disability retirement benefits under section 607-b. Petitioners’ argument has no support in the language or legislative history of section 607-b.
Retirement and Social Security Law § 605 (e), enacted less than two months after section 607-b, provides:
“The board of trustees of the [NYCERS] may, consistent with the provisions of this section, adopt rules and regulations establishing a procedure for the medical review of determinations made by such retirement system on applications for disability retirement filed pursuant to this section.”
Pursuant to section 605 (e) a party can request review of the Medical Board’s initial determination by a Special Medical Committee consisting of three physicians whose recommendation supersedes the Medical Board’s (see NYCERS Rules, rule 23[a] [10]).
The plain language of Retirement and Social Security Law § 607-b specifically references only section 605 (c). Significantly, after enacting section 605 (e), the Legislature did not amend section 607-b to incorporate it. Additionally, section 605 (e) states that it applies only to those who seek benefits “pursuant to this section”—not the enhanced benefits under section 607-b. The NYCERS Rules promulgated thereunder also provide that they govern “all applications for disability retirement filed by members subject to the provisions of §605 of Article 15 of the RSSL” (NYCERS Rules, rule 23[a] [1]).
The legislative history further supports the conclusion we reach. Section 605 (e) was added to the generalized “Disability retirement” scheme of section 605 to rectify “Tier inequity” “by providing Tier III and IV members of NYCERS with the same medical review rights as Tier I and II members of NYC-ERS” (Mem of Senate in Support, 1998 McKinney’s Session Laws of NY, at 1997). If EMTs are now afforded the additional level of review provided for in section 605 (e), the legislative intent of section 607-b would be frustrated and a new disparity introduced between EMTs and firefighters, as firefighters are not entitled to section 605 (e) review. Having acted specifically to eliminate the disparity between EMTs and firefighters, it is inconceivable that the Legislature, less than two months later, would have intended implicitly to create a new disparity.
*647 Accordingly, the order of the Appellate Division should be reversed, with costs, and the petition dismissed.
Judges G.B. Smith, Ciparick, Rosenblatt, Graffeo, Read and R.S. Smith concur.
Order reversed, etc.

. NYCERS is a public retirement system governed by New York law (see Retirement and Social Security Law arts 11, 14, 15). Employees of the City of New York may become members of NYCERS, which is administered by a Board of Trustees composed of city members, union members and each of the borough presidents. Employees who join NYCERS become members of a certain “Tier” based on the date they join the system. The NYCERS Medical Board consists of three appointed physicians. After examining an applicant seeking disability benefits they forward a written report with a recommendation to the NYCERS Board of Trustees, who can accept or reject it (see Administrative Code of City of NY § 13-123; NYCERS Rules, rule 23[a] [4], [6]).

. Prior to argument before the Appellate Division, the parties stipulated that, regardless of the outcome of this case, NYCERS would pay performance-of-duty disability retirement benefits to any member whose application for such benefits filed pursuant to Retirement and Social Security Law § 607-b had been approved after review by a Special Medical Committee, prior to commencement of this proceeding. Thus, the only issue before us is whether independent medical review under Retirement and Social Security Law § 605 (e) should be available prospectively to EMTs applying for three-quarter disability retirement benefits under Retirement and Social Security Law § 607-b.

. Prior to the enactment of section 607-b, Tier TV EMTs applied for performance-of-duty disability retirement benefits under Retirement and Social Security Law § 605, which generally entitled them to benefits equal to the greater of one third of their final average salary or one sixtieth of their final average salary, multiplied by the number of years of credited service (see Retirement and Social Security Law § 605 [d] [3]).