OPINION OF THE COURT
Jasen, J.
In this CPLR article 78 proceeding, we are called upon to decide whether the determination of the respondent Board of Police Commissioners of the Town of Greenburgh dismissing petitioner Purdy from the police department is supported by substantial evidence.
Petitioner, a veteran of the Town of Greenburgh police force, was charged with violating various departmental rules and regulations. After a hearing at which petitioner was represented by counsel and extensive testimony was adduced, petitioner was found guilty of violating chapter 9.5.14 of the applicable departmental rules which provides that "[m]embers shall not use nor threaten to use their official power or authority in any manner, directly or indirectly, in aid of or against any political party or organization, association or society.”* The Board of Police Commissioners (hereinafter "Board”), concluding that "the charges and the findings seriously affect [petitioner’s] character, fitness and efficiency as a police officer”, directed that petitioner be immediately dismissed.
 Petitioner then instituted the present proceeding seeking to annul, or in the alternative modify, the Board’s determination. The Appellate Division annulled the Board’s determination, holding that petitioner "was not guilty of the charged violation in that he did not 'use nor threaten to use’ his 'official power or authority’ in a politically partisan man *358 ner”, and directed that petitioner be restored to his prior position. We now reverse and reinstate the Board’s determination.
Upon judicial review of a determination rendered by an administrative body after a hearing, the issue presented for the court’s consideration is limited to whether that determination is supported by substantial evidence upon the entire record. (CPLR 7803, subd 4; see 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 181; Matter of Pell v Board of Educ., 34 NY2d 222, 230-232; Matter of Holland v Edwards, 307 NY 38, 44; Matter of Stork Rest. v Boland, 282 NY 256, 266-267.) A reviewing court in passing upon this question of law may not substitute its own judgment of the evidence for that of the administrative agency, but should review the whole record to determine whether there exists a rational basis to support the findings upon which the agency’s determination is predicated. (See Matter of Pell v Board of Educ., 34 NY2d, at p 231, supra.)
Our study of the record reveals that petitioner, then president of the Greenburgh Police Association — an organization comprised of members of the police force and formed to promote the interests of its members — initiated a campaign to oppose the re-election of Anthony Veteran, the town supervisor, by distributing a letter, dated October 20, 1975, to his fellow officers. This correspondence contained the following language: "I think it is about time that we flexed our muscles and became politically involved. We have 14 days in which to mount a campaign. If you support the following recommendations [to become politically involved], I ask you and your wife and your family to join hands and work together in the common goal of defeating, at the polls in the Town of Green-burgh on November 4th, Anthony Veteran, Supervisor.”
One day thereafter, on October 21, petitioner sent out a letter informing his fellow officers that "70% of you gave a clear cut mandate to get involved to oppose Supervisor Anthony Veteran.” This letter went on to state: "We will be reaching out to you within the next few days to work together for the defeat of Anthony Veteran. Let the Greenburgh community hear our voice. Let them know we exist.”
Petitioner’s personal stake in the effort to displace Veteran became readily apparent at a general meeting of the police association held on October 23. The minutes reveal that ,in *359 response to a motion that the association not expend any further sums to support or oppose any political candidate, petitioner stated that "he felt strongly about this issue and if necessary * * * would waive his $4,000 retirement benefit from the association and donate it for this action.”
Sometime after the October 23 meeting, with the impending election only a few days off, a four-page letter, signed by petitioner as president of the police association, was mailed to the residents of the Town of Greenburgh. This letter, printed on police association stationery with the shield of the association prominently displayed, is in the form of a series of statements delineated as "facts”, and reference is continually made to police officers of the Town of Greenburgh. It charges Veteran with conducting "slur campaigns” against Green-burgh police officers ("corruption, malfeasance, and misconduct by public officials and police are [Veteran’s] campaign slogans”), and states, as fact, that Veteran’s "political interference in the police department operation caused crime to rise 47% in the first quarter of 1975”. This letter further charges Veteran with padding the payroll with political appointments to the detriment of the police department and with attempting "to destroy the Town of Greenburgh, its people and its police”, and concludes, "[w]e must rid our Town of this cancer [Veteran].”
In light of this evidence, we think it abundantly clear that there was indeed a rational basis to support the Board’s findings that the petitioner was the moving force behind the decision of the police association "to become involved in 'political activity’ ” and, also, that the correspondence distributed by petitioner "showed the use of his official power as a police officer directly in aid of, or against, a candidate for political office, and that [petitioner] became a partisan against a candidate, and that ordinary persons exercising ordinary common sense would clearly understand the import and the implication of his acts.” By printing the letter distributed to the town residents on police association stationery with the shield of the association prominently displayed and by labeling the same as "An Important Message from your Police Association”, it is the inescapable conclusion that such letter, signed by petitioner, both embodied and reflected the full strength and power of police authority. It is exactly this type of conduct, namely utilizing one’s status as a police officer as the vehicle through which to disseminate partisan political *360 views, which chapter 9.5.14 of the departmental regulations was obviously intended to proscribe.
 It is petitioner’s contention, however, that even if the Board’s determination is supported by substantial evidence, which we now hold it is, the penalty of dismissal must be set aside as unduly harsh given the violation involved. We disagree.
Once it is determined that there is substantial evidence to support an administrative body’s determination, the sanction imposed by that body will not be set aside unless the measure of punishment is "' "so disproportionate to the offense, in light of all the circumstances, as to be shocking to one’s sense of fairness.” ’ ” (Matter of Pell v Board of Educ., 34 NY2d 222, 233, supra.) While the genesis of this "test” can be explained by the limited scope of review accorded courts in administrative matters (id., at pp 230-235; CPLR 7803, subd 3), there exists a practical, but nonetheless compelling, reason for courts to exercise restraint before intervening into matters involving internal discipline for, as we have recognized, "[i]n such matters the administrative official or agency is assumed to possess not only a special proficiency and experience which are not always to be found in the courts, but also an alertness to and a comprehension of the complexity and sensitiveness of personnel administration in continuing intraorganizational relationships”. (Matter of Ahsaf v Nyquist, 37 NY2d 182, 184-185.)
Here, the record confirms the finding of the Board that the "substantial credible evidence shows that [petitioner] was the planner, the architect and the great influencing factor in the position taken by the Police Association”. Given the calculated nature of the campaign to oppose the election of Anthony Veteran and the dangers inherent in allowing police officers — holders of a most sensitive and unique role in our communities — to use their official power when engaging in partisan politics, we cannot say, as a matter of law, that petitioner’s dismissal is so disproportionate to the offense as to be "shocking to one’s sense of fairness”.
One remaining issue requires brief comment. Although petitioner steadfastly maintains that the constitutionality of chapter 9.5.14 of the departmental rules is not at issue in this case, but, rather, "a smoke screen issue which should be ignored by this Court”, insofar as we now reinstate the Board’s determination, this issue must be reached.
*361 Almost 90 years ago, Judge Oliver Wendell Holmes articulated the rationale employed to uphold the constitutionality of a police regulation prohibiting officers from "soliciting] money or any aid, on any pretense, for any political purpose whatever” as follows: "[T]here is nothing in the Constitution * * * to prevent the city from attaching obedience to this rule as a condition to the office of policeman, and making it part of the good conduct required. The petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman.” (McAuliffe v Mayor of New Bedford, 155 Mass 216, 220.) As has been consistently recognized, a rule which prohibits a police officer from participating in the political arena, whether it be by soliciting votes or financial aid or by influencing any voter at an election, "comports with [the] sound administration policy that the removal of police personnel from active politics and from active participation in any movement for the nomination or election of candidates for political or public office is conducive to the effective maintenance of discipline and the preservation and promotion of the integrity and efficiency of the Police Department and its personnel.” (Matter of Lecci v Looney, 33 AD2d 916, 917, mot for lv to app den 26 NY2d 612; see Perry v St. Pierre, 518 F2d 184; Boyle v Kirwin, 39 AD2d 993; cf. Belle v Town Bd. of Town of Onondaga, 61 AD2d 352, 358-359.) Likewise, the authority of the Federal and State Governments to prohibit their officers and employees from engaging in specified political activities has been consistently sanctioned. (CSC v Letter Carriers, 413 US 548; Broadrick v Oklahoma, 413 US 601; United Public Workers v Mitchell, 330 US 75.)
Here, chapter 9.5.14 of rules and regulations of the Green-burgh Police Department proscribes the use or threatened use of the policeman’s "official power or authority in any manner, directly or indirectly, in aid of or against any political party or organization, association or society.” Stated a bit differently, this rule prohibits a policeman from utilizing his status and authority as a law enforcement officer as the means to aid or to hinder a political entity. It does so in an evenhanded manner without differentiation as to political cause or otherwise, and does not prevent a police officer, as a private citizen, from expressing his or her political views. The rule, the clear import of which proscribes the use of police authority in the *362 political spectrum — certainly a legitimate and worthwhile objective — must be sustained as constitutional.
 In sum, we sustain the constitutionality of chapter 9.5.14 of the rules and regulations of the Greenburgh Police Department, and hold that the Board’s determination is supported by substantial evidence and that the penalty of dismissal is not so disproportionate to the offense as to mandate modification.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the determination of the Board of Police Commissioners reinstated.
Chief Judge Cooke and Judges Gabrielli, Jones, Wachtler and Fuchsberg concur with Judge Jasen.
Order reversed, etc.

 Chapter 9.5.14 of the rules and regulations of the Greenburgh Police Department mirrors, in essence, subdivision 1 of section 17-110 of the Election Law (formerly Election Law, § 426), which provides:
"Any person who, being a police commissioner or any officer or member of any police force in this state:
"1. Uses or threatens or attempts to use his official power or authority, in any manner, directly or indirectly, in aid of or against any political party, organization, association or society, or to control, affect, influence, reward or punish, the political adherence, affiliation, action, expression or opinion of any citizen * * * is guilty of a misdemeanor.”