■ BARBARA GARDNER, Doing Business as MAPLE MANOR, Petitioner, v DAVID AXELROD, as Commissioner of Health of the State of New York, et al., Respondents. — Proceeding pursuant to CPLR article 78 to review a determination of respondent Commissioner David Axelrod, dated November 1, 1983, which, after a hearing, directed petitioner to cease operating her business as a nursing home or health-related facility.

Determination confirmed and proceeding dismissed on the merits, without costs or disbursements.

Since 1981, petitioner, a licensed registered nurse, has provided private residential nursing care in her home under the name of Maple Manor for a number of individuals in what might be described as a family type environment. It was admitted by petitioner that, at the time of the hearing, she was caring for eight elderly residents at the facility, none of whom were related by either blood or marriage. In exchange for fees ranging up to $1,800 per month, depending upon ability to pay, petitioner provided the residents of Maple Manor with lodging and board and also various services relating to their medical and dietary needs. Following an inspection by respondents' investigators, it was determined that a number of these residents were in need of skilled nursing facility care. Based upon this and other information, respondents charged petitioner with operating a "nursing home" or "health-related facility" as defined by the Commissioner's regulations (10 NYCRR 414.1 [a] [1], [3]), without having obtained the necessary approval under section 2801-a of the Public Health Law. Following a hearing, the respondent Commissioner, adopting the findings of the hearing officer, concluded that all of the residents at Maple Manor qualified for at least health-related facility care, if not nursing home care, and directed, *inter alia,* that petitioner cease operating Maple Manor as a nursing home or health-related facility and cease accepting as residents any persons who would be classified as skilled nursing home or health-related facility patients.

10 NYCRR 414.1 (a) (1) defines a health-related facility as follows: "*Health-related facility* shall mean a facility, institution, intermediate care facility, or a separate or distinct part thereof, providing therein lodging, board and social and physical

care, including but not limited to the recording of health information, dietary supervision and supervised hygenic services incident to such care *to six or more residents* not related to the operator by marriage or by blood within the third degree of consanguinity" (emphasis supplied).

10 NYCRR 414.1 (a) (3) defines a nursing home as follows: "*Nursing home* shall mean a facility, institution, or portion thereof, providing therein, by or under the supervision of a physician, nursing care and other health, health-related, and social services as specified in this Subchapter for 24 or more consecutive hours *to three or more nursing home patients* who are not related to the operator by marriage or by blood within the third degree of consanguinity, including, but not limited to, an infirmary section which is identifiable as a nursing home unit in a special area, wing or separate building of a public or voluntary home or of a general or special hospital" (emphasis supplied).

It is clear from the evidence adduced at the hearing, including petitioner's own admissions, that there exists substantial evidence to support respondents' finding that petitioner was operating a "health-related facility" or "nursing home" without the proper approvals (*Matter of Acosta v Wollett,* 55 NY2d 761; *Matter of Purdy v Kreisberg,* 47 NY2d 354). A contrary conclusion is not dictated by the fact that in April, 1983 petitioner executed a deed transferring ownership of the property to herself and the residents of Maple Manor as tenants in common. Regardless of the manner in which title to the premises is held, it is clear that the residents are still paying for the services rendered to them and that the petitioner is operating the residence as a nursing home or health care facility. While petitioner's purposes in providing care for the elderly and infirm may be laudable, and while there may be no evidence of patient abuse or mistreatment, the public policy of the State nevertheless requires that individuals providing health care services comply with the licensing procedures and operational standards promulgated by the Commissioner. Titone, J. P., Gibbons, Brown and Niehoff, JJ., concur.