■ WILLIAM A. SEWELL, Respondent, v CITY OF NEW YORK et al., Appellants.—Order and judgment (one paper) of the Su-

preme Court, New York County (Franklin R. Weissberg, J.), entered on January 4, 1991, which granted petitioner's petition pursuant to CPLR article 78 to set aside respondents' determination to revoke his pistol license, is unanimously reversed on the law and the petition denied and dismissed, without costs or disbursements.

Petitioner William Sewell, a retired detective, had his pistol license suspended by respondent New York City Police Department on March 23, 1988, and an administrative hearing ensued. The reason for respondents' action was information received concerning jury tampering in the matter of *United States v Ruggiero,* a Federal criminal prosecution. The United States District Court for the Eastern District of New York had declared a mistrial due to, among other things, evidence that petitioner's services had helped in identifying the members of the supposedly anonymous jury. In that regard, confidential informants advised the Federal Bureau of Investigation (FBI) that petitioner had engaged in jury tampering in the subject proceeding. Since the case involved such charges as racketeering and heroin distribution, an anonymous jury had been impaneled. After it conducted an examination of the allegations, the government brought the results of its investigation to the attention of the District Court, which interviewed each juror in chambers and held hearings. Accordingly, the court determined that there was a great likelihood that the jury panel had been compromised. The inquiry into jury tampering in the *Ruggiero* trial, as well as press reports on the subject, prompted a probe into petitioner's fitness to possess a retired Member of the Service (MOS) pistol license, at the conclusion of which he was directed to surrender his weapons.

At the administrative hearing, Special Agent John F. Flanagan testified that of the approximately 13 years that he had been employed by the FBI, he had been assigned to organized crime for the last 10 of those years. As part of his duties, he investigated the claims of jury tampering in *United States v Ruggiero,* in which Angelo Ruggiero, Gene Gotti and other members of the Gambino crime family were defendants. Several months into the trial, the FBI learned from confidential informants whose information had proved credible in the past that defendants, including Gene Gotti, were attempting to identify and contact jurors. The informant told Agent Flanagan that petitioner had been retained to identify jurors so that someone could "attempt to approach them, bribe them, or by some means influence them", and he was aware that the purpose was to compromise the jury. Moreover, petitioner,

who had worked for defense counsel on a prior trial of John Gotti, would follow jurors out of the courtroom in order to tail them to a car or home.

In addition, Agent Flanagan stated that when an individual named Gary Barnes was dismissed from the jury because he was not a citizen of the United States, he was able to corroborate the confidential informants' account. Upon interviewing Barnes, Agent Flanagan discovered that the former had been approached by a co-worker, Melvin Rosenberg, who offered him a BMW in exchange for details about the jury. Although Barnes did not know petitioner by name, he later positively identified a photograph of him as someone whom he had observed in the courtroom a couple of times during the trial. Further, Barnes described an incident that had occurred in the municipal parking garage when he was walking with another juror to her car and petitioner came up alongside Barnes, and he also indicated having seen petitioner talking with a defense lawyer during a pause in the trial. The other juror was questioned by Agent Flanagan and confirmed Barnes' version. While Rosenberg was quizzed by Agent Flanagan as well, he denied any acquaintance with Gotti or tendering a BMW to Barnes; he did, however, recall a conversation dealing with the jury that he characterized as a "lark". Flanagan also testified that petitioner and his attorney met with Rosenberg in a restaurant concerning a grand jury subpoena served upon Rosenberg. In Agent Flanagan's opinion, petitioner had followed Barnes, and then Rosenberg, believing that he was still on the jury, made the overture of the BMW in exchange for information about the jury. Petitioner, however, denied to Agent Flanagan that he had ever been asked to identify an anonymous juror and merely depicted himself as a paralegal primarily engaged in serving subpoenas.

Petitioner took the same position during his testimony at the administrative hearing. He asserted that since his retirement from the Police Department, he had been doing such paralegal work for attorneys as serving subpoenas, locating and interviewing witnesses and taking statements from clients. Indeed, he did not have a private investigator's license. Petitioner admitted having worked on the John Gotti case but denied having ever been assigned to follow anyone. His attendance at the *Ruggiero* trial on several occasions was attributed to the necessity of picking up some legal material or idle curiosity. Finally, petitioner recalled accompanying his lawyer

to the restaurant in question but claimed that he never saw Rosenberg and had no idea who he was.

The Hearing Officer, evidently deeming the testimony of Agent Flanagan more persuasive than that of petitioner, issued a report recommending that petitioner's pistol license be revoked. Petitioner thereafter appealed the finding to the Commanding Officer of the License Division, who denied the appeal and revoked his license on the ground that he had improperly endeavored to identify anonymous jurors, did in fact have a conversation with one juror, causing a mistrial, and was, therefore, unfit to possess licensed firearms. Petitioner subsequently commenced the instant proceeding pursuant to CPLR article 78.

The Supreme Court granted the petition to set aside respondents' determination and ordered the return of petitioner's MOS license. Although the court acknowledged that the Police Department has broad discretion under New York State law to decide whether a pistol permit will be issued or revoked, and a court which reviews an administrative ruling will not generally disturb it absent arbitrariness or capriciousness or where there is an abuse of discretion, nonetheless in the view of the court the facts here were insufficient to justify the agency's determination. The court rejected respondents' reliance upon the testimony of Agent Flanagan as being almost entirely hearsay and derived from information provided by confidential informants. According to the court, "[t]he only indicia of the reliability of the informants herein were the unsupported assurances of the agent that they had been reliable in the past." The conclusion of the Supreme Court was, however, erroneous, and the petition should have been denied and dismissed.

The possession of a handgun license is a privilege rather than a right (*Matter of Caruso v Ward,* 160 AD2d 540, *lv denied* 76 NY2d 706). The New York City Police Commissioner has broad discretion to grant licenses in accordance with the provisions of Penal Law § 400.00 and Administrative Code of the City of New York § 10-131 (a) (1). Moreover, "[a] license may be revoked and cancelled at any time in the city of New York * * * by the licensing officer" (Penal Law § 400.00 [11]). As a condition for being accorded a license, petitioner was required to execute a statement prepared by the Commissioner's office that declared, in part, that:

"In proper cases, retired members of the service have been issued pistol licenses. The license is subject to restrictions. The retired member of the service shall not:

"Engage in any illegal activities.

"Frequent any suspected premises or any location which is frequented by known criminals, gamblers or other persons of ill repute.

"Be employed by any persons engaged in illegal activities or any firm controlled by such persons.

"Associate with any known criminals, gamblers or other persons of ill repute.

"The continuance of a retired member of the service pistol license is conditioned upon the members good moral character. If there is any change in the status, the pistol license will be revoked."

The only issue for consideration by the court is whether the administrative decision to revoke petitioner's pistol license was arbitrary and capricious or an abuse of discretion *(Matter of Pell v Board of Educ.,* 34 NY2d 222; *Matter of Lipton v Ward,* 116 AD2d 474). The judicial function is limited to ascertaining whether there is a rational basis for the agency's determination *(Matter of Sullivan County Harness Racing Assn. v Glasser,* 30 NY2d 269). A rational basis for revoking a pistol license exists when the evidence adduced is adequate to support the Commissioner's action *(Matter of Beninson v Police Dept.,* 176 AD2d 183; *see also, 300 Gramatan Ave. Assocs. v State Div. of Human Rights,* 45 NY2d 176). In reviewing the administrative ruling, the court must defer to the fact-finder's assessment of the evidence and the credibility of witnesses *(Matter of Berenhaus v Ward,* 70 NY2d 436; *Matter of Interliners Lounge Social Club v Department of Consumer Affairs,* 176 AD2d 169). It is axiomatic that the "court may not weigh the evidence, choose between conflicting proof, substitute its assessment of the evidence or interfere with the Administrative Law Judge's province to pass on the credibility of witnesses" *(Matter of Deitch v Dole,* 159 AD2d 311).

In the instant situation, the Supreme Court, by concluding that Agent Flanagan's testimony was unreliable because it rested upon his unsupported assurances that since his confidential informants had been trustworthy in the past their information was believable, improperly replaced the Hearing Officer's view of the evidence with that of his own. Certainly, "[h]earsay evidence can be the basis of an administrative determination" *(Matter of Gray v Adduci,* 73 NY2d 741, 742). In any event, the court apparently also discounted the corroborative statements that Agent Flanagan procured from, for

instance, his interviews with Gary Barnes or the other juror. He seems, further, to have accorded no weight to the fact that the United States District Court had declared a mistrial in the *Ruggiero* matter upon indications of the same misconduct which led the Police Department to revoke petitioner's pistol license. Clearly, the court herein exceeded its judicial review purview. Since there was sufficient evidence to justify revocation of petitioner's license, the petition should have been denied and dismissed. Concur—Milonas, J. P., Wallach, Kassal and Rubin, JJ.