OPINION OF THE COURT
Arthur M. Schack, J.
Petitioner Emmanuel Lidakis, in this CPLR article 78 proceeding, seeks a judgment: directing respondents, the New York City Employees’ Retirement System (NYCERS) and the City of New York (City), to give him the option to be examined by a Special Medical Committee, pursuant to Retirement and Social Security Law § 607-b and Administrative Code of the City of New York City § 13-169; or, in the alternative, annulling a NYCERS Board of Trustees (Board of Trustees) March 12, 2009 decision rescinding petitioner’s “performance of duty disability” retirement (PDD retirement), pursuant to Retirement and Social Security Law § 607-b, and remanding his case for further review based upon the substantial medical evidence in the record. Respondents oppose and seek dismissal of the instant petition.
NYCERS Board of Trustees granted petitioner a “three-quarters pay” PDD retirement pension, on April 12, 2007, when it approved the February 14, 2007 findings of NYCERS Medical Board, subject to a medical review the next year, pursuant to Retirement and Social Security Law § 607-b, the Retirement and Social Security Law section concerned with PDD pensions for New York City Fire Department (FDNY) emergency medical technicians (EMTs). The Medical Board reexamined petitioner on March 20, 2008 and reviewed new evidence. It found that petitioner was no longer disabled and recommended a discontinuation of petitioner’s PDD retirement. Petitioner provided additional medical documentation to NYCERS Board of Trustees. However, NYCERS Board of Trustees, on March 12, 2009, approved the March 20, 2008 Medical Board findings without ever remanding the new medical documentation to the Medical Board or giving statutory notice to petitioner that he had a right to review by a Special Medical Committee, pursuant to Administrative Code § 13-169, in furtherance of petitioner’s rights afforded by Retirement and Social Security Law § 607-b.
This appears to be a case of first impression. NYCERS and the City claim that after granting a PDD retirement to a NYCERS member and then subsequently rescinding that bene *1152 fit, the NYCERS member, to his or her detriment, has no right to appeal to the statutorily created Special Medical Committee. This is arbitrary, capricious and an abuse of discretion. Thus, because respondents deprived petitioner of his statutory right of review by a Special Medical Committee, the instant petition is granted to the extent that respondents are directed to give petitioner the option of filing a written request for review of his PDD retirement status by a Special Medical Committee, in accordance with Retirement and Social Security Law § 607-b and Administrative Code § 13-169.
Background
Petitioner, on November 5, 1999, was appointed to the FDNY as an EMT. He became a tier 4 member of NYCERS, pursuant to Administrative Code § 13-104. On September 28, 2003, petitioner, in the performance of his duties, sustained a sprain to his right knee while carrying a patient down stairs. On January 24, 2005, petitioner, in the performance of his duties, sustained injuries to his right and left knees when he slipped on ice and fell on his knees while getting into an FDNY vehicle. The FDNY Medical Board Committee, on February 1, 2005, found petitioner unfit for duty, with permanent right knee disability. Subsequently, on March 15, 2005, petitioner sustained a left knee injury when a box fell on his knee while he was arranging supplies at a hospital, in the performance of his duties.
Petitioner, on December 13, 2006, filed an application for PDD retirement, pursuant to Retirement and Social Security Law § 607-b. PDD retirement for an EMT is equivalent to “accident disability retirement” (ADR), the term used for a “three-quarters pay” disability retirement pension sustained in the line of duty for most NYCERS members. NYCERS Medical Board, on February 14, 2007, interviewed and examined petitioner. The Medical Board, in its February 14, 2007 report, stated that on February 10, 2005, petitioner’s orthopedist, Albert Graziosa, M.D., diagnosed petitioner as having a left knee sprain with involvement of the medial collateral ligament, and that after that date, petitioner was seen at approximately one-month intervals by Dr. Graziosa. Dr. Graziosa continued his diagnosis and, at times, his diagnosis also included internal derangement of petitioner’s left knee. The Medical Board report further noted that Dr. Graziosa’s May 12, 2006 report also included an impression of grade II degenerative changes of petitioner’s left knee at the posterior horn of the medial *1153 meniscus and osteoarthritis. The Medical Board examined petitioner and found puffiness in petitioner’s left knee and a perceptible fullness, as compared to petitioner’s right knee. Further, the Medical Board found petitioner’s left knee lacked 15 degrees from full extension, displayed 1+ anterior posterior drawer sign on the left, and minimal crepitation on active and passive motion of petitioner’s left knee. However, the Medical Board found the range of motion of petitioner’s right knee to be full with no crepitation of motion and normal stability.
The Medical Board, based upon the documentary and clinical evidence, in its February 14, 2007 report, diagnosed petitioner with chronic synovitis of the left knee and found petitioner disabled from performing his duties as an FDNY EMT, with the January 24, 2005 and March 15, 2005 incidents being the competent causes of petitioner’s disability. Therefore, the Medical Board recommended approval of petitioner’s application for a FDD pension, pursuant to Retirement and Social Security Law § 607-b, and added in its report, “[hjowever, the Medical Board does not feel that the disability is permanent. The Board would, therefore, like to re-examine [petitioner] in one year.”
NYCERS Board of Trustees, on April 12, 2007, adopted the Medical Board’s recommendation and approved petitioner’s FDD pension, pursuant to Retirement and Social Security Law § 607-b and established his retirement date as February 25, 2007. The Board of Trustees, in a letter dated April 13, 2007, advised petitioner that if he did not wish to be retired, he could commence a CPLR article 78 proceeding. It further advised him that he could alternatively have his bargaining representative, or the head of the agency in which he was employed, request, on his behalf, review by a Special Medical Committee made up of three independent doctors, and that if he elected to have such a review, he would be required to submit a waiver within 45 days of the receipt of that letter, and that the recommendation of the physicians on the Special Medical Committee would be final and conclusive.
The Medical Board, on March 20, 2008, reexamined petitioner to determine if he was still disabled from performing his duties as an EMT. It also reviewed new medical evidence, including: a June 29, 2005 MRI of petitioner’s right knee which found grade II degenerative change in the posterior horn of the medial meniscus; a December 19, 2006 report by Dr. Graziosa, which stated that petitioner had a mild to moderate partial disability because of injuries to his left knee, with a guarded to fair *1154 prognosis; and, several other Dr. Graziosa reports, which essentially all stated that petitioner had a mild to moderate partial disability, with a guarded prognosis, left medial collateral ligament strain and grade II changes in the posterior horn of the medial meniscus with chondromalacia of the patella. Petitioner stated to the Medical Board that since his last examination by the Medical Board the pain in his right knee had become more severe. The Medical Board examined petitioner, finding that petitioner “had normal range of motion in both knees without instability, effusion, or crepitus,” “measurements of petitioner’s thighs were 17-1/2 inches bilaterally,” and “no swelling of either extremity and pulses were normal.”
The Medical Board, in its March 20, 2008 report, after considering the submitted medical evidence and the findings of its own examination, found petitioner no longer disabled from performing the duties of an FDNY EMT. Therefore, the Medical Board recommended discontinuation of petitioner’s PDD retirement, pursuant to Retirement and Social Security Law § 607-b, and placing petitioner on a preferential hiring list. NYCERS, in a letter dated March 26, 2008, notified petitioner of the Medical Board’s recommendation.
Then, petitioner submitted additional medical documentation to the Board of Trustees and requested that his case be referred back to the Medical Board for further review. This documentation included reports from Robert A. Marini, M.D., a pain management specialist. Dr. Marini, in his August 11, 2008 report, stated that petitioner had right knee internal derangement with chronic pain syndrome. His September 5, 2008 report stated that petitioner had left knee internal derangement with chronic pain syndrome. In addition, petitioner submitted MRIs, dated May 1, 2008, showing a right knee tear of the posterior horn of the medial meniscus, proximal scarring of the medial collateral ligament, with joint effusion in his right knee, and anterior cruciate ligament scarring and joint effusion of the left knee. Petitioner also submitted several additional Dr. Graziosa reports, the most recent dated March 25, 2009, stating an impression of bilateral knee derangement with associated osteoarthritis, severe chondromalacia and chronic pain syndrome.
NYCERS Board of Trustees, at various times, tabled remanding petitioner’s case with the additional submitted medical evidence to the Medical Board. However, in a letter, dated May 14, 2009, the Board of Trustees notified petitioner that on March 12, 2009 the Board of Trustees reviewed his case and adopted a *1155 resolution that with the Medical Board certifying that petitioner was “no longer incapacitated and fit to be restored to duty” as an EMT, the Board of Trustees, “pursuant to the provisions of Section 13-171 of the Administrative Code” certifies to the Department of Citywide Administrative Service petitioner’s name “for registry as a preferred eligible on an appropriate list of candidates for appointment” as an EMT. This letter did not offer petitioner the option to have his case reviewed by the Special Medical Committee.
Petitioner, on September 28, 2009, filed the instant CPLR article 78 petition. Respondents, after several stipulated adjournments, interposed their verified answer to the petition. All parties appeared for oral argument on March 5, 2010. The court reserved decision.
Article 78 Review Standards
The court’s function in a CPLR article 78 proceeding is to determine whether the action of an administrative agency had a rational basis or was arbitrary and capricious (Matter of Borenstein v New York City Employees’ Retirement Sys., 88 NY2d 756, 760 [1996]; Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 230-231 [1974]). “Arbitrary action is without sound basis in reason and is generally taken without regard to the facts” (Pell at 231). Administrative agencies must act “lawfully, with due regard to the essential evidence and in a nonarbitrary fashion” (Matter of VR Equities v New York City Conciliation & Appeals Bd., 118 AD2d 459, 461 [1st Dept 1986]). Moreover, when an administrative agency has not observed its own standards or has violated lawful procedure by denying an applicant his or her statutory rights, its determination cannot be sustained (CPLR 7803 [3]).
A rational basis exists where the determination is “ ‘[supported] by proof sufficient to satisfy a reasonable [person], of all the facts necessary to be proved in order to authorize the determination.’ ” (Matter of Ador Realty, LLC v Division of Hous. & Community Renewal, 25 AD3d 128, 139-140 [2d Dept 2005], quoting Pell at 231; see Matter of Consolation Nursing Home v Commissioner of N.Y. State Dept. of Health, 85 NY2d 326, 331 [1995]; 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 180 [1978]; Matter of Sullivan County Harness Racing Assn. v Glasser, 30 NY2d 269 [1972]; Sewell v City of New York, 182 AD2d 469 [1st Dept 1992], lv denied 80 NY2d *1156 756 [1992].) If the reviewing court finds that the agency determination has a rational basis, supported by substantial evidence, such determination must be sustained (Matter of Navaretta v Town of Oyster Bay, 72 AD3d 823 [2d Dept 2010]; Matter of Halperin v City of New Rochelle, 24 AD3d 768 [2d Dept 2005]; Matter of Dawson v Zoning Bd. of Appeals of Town of Southold, 12 AD3d 444 [2d Dept 2004]). When the decision under review is not arbitrary and capricious, the reviewing court in an article 78 proceeding is prohibited from substituting its own judgment for that of the agency. (See Morley v Arricale, 66 NY2d 665 [1985]; Matter of Purdy v Kreisberg, 47 NY2d 354 [1979]; Pell at 230-232.)
Discussion
The Medical Board, pursuant to Administrative Code § 13-168 (a), to award a FDD or ADR disability retirement pension to a NYCERS member, must determine “whether the applicant is actually physically or mentally incapacitated for the performance of city-service.” (See Matter of Borenstein v New York City Employees’ Retirement Sys., 88 NY2d 756, 760 [1996] [internal quotation marks omitted].) When an application for FDD or ADR retirement of a NYCERS member has been filed pursuant to Administrative Code § 13-168 and the Board of Trustees has acted on the Medical Board report, the member has the right to review by a Special Medical Committee, pursuant to relevant sections of the Retirement and Social Security Law and Administrative Code § 13-169.
Respondents, in their opposition to the instant petition, contend that petitioner has no right to review by the Special Medical Committee because he was called back for a review of his FDD retirement, pursuant to Administrative Code § 13-171. Section 13-171 does not provide for final medical review by a Special Medical Committee as an alternative to filing a CPLR article 78 proceeding. Administrative Code § 13-171, entitled “Safeguards on disability retirement,” provides:
“Once each year the board may, and upon his or her application shall, require any disability pensioner, under the minimum age for service retirement for the group from which he or she was retired to undergo medical examination. Such examination shall be made at the place of residence of such beneficiary or other place mutually agreed upon.” (Administrative Code § 13-171 [a].)
*1157 However, respondents’ contention is devoid of merit. Petitioner’s application for PDD retirement was filed pursuant to Retirement and Social Security Law § 607-b. The March 20, 2008 Medical Board report specifically stated that its recommendation to discontinue petitioner’s retirement benefits was being made “under the provisions of [Retirement and Social Security Law] Section 607-b.” In response to the Court of Appeals decision in Matter of Roberts v Murphy (2 NY3d 641, 646 [2004]), holding that tier 4 FDNY EMTs who filed for PDD retirement benefits were not entitled to a review of their application by a Special Medical Committee, the Legislature amended Retirement and Social Security Law § 607-b (L 2004, ch 725, § 1 [eff Nov. 24, 2004]), to specifically provide that an EMT NYCERS member who makes an application for PDD retirement shall be entitled to invoke the medical review procedure provided for in Retirement and Social Security Law § 605 (e). This allows a tier 4 EMT, such as petitioner, the right to a medical review by a Special Medical Committee, as set forth in Administrative Code § 13-169, which states:
“In any case where an application for retirement of a member for disability has been filed pursuant to section 13-167 or 13-168 of this chapter, the executive director of the retirement system, promptly after the board constituting the head of the retirement system acts on the report or certification of the medical board with respect to such application, shall give notice of such action by the board constituting such head to such member and to the appropriate agency head. Within fifteen days after such notification, any party entitled to review may file with the executive director a written request that a special medical committee, as provided for in this section, shall review the conclusions and recommendations of the medical board set forth in its report or certification and the determination of the board of trustees made pursuant to section 13-168 of this chapter.” (Administrative Code § 13-169 [b] [1].)
Respondents cannot circumvent petitioner’s right to this statutory procedure by giving petitioner this right only at the point of time when his application for a disability pension was granted in April 2007 and then deny petitioner this right upon rescission of his PDD retirement in May 2009, by characterizing the rescission of his PDD retirement as merely a review, under the safeguards on disability retirement provision of Administra *1158 tive Code § 13-171. Petitioner, in April 2007, had no reason to invoke a medical review by a Special Medical Committee because the Board of Trustees granted petitioner his PDD retirement application. To only permit petitioner to invoke his right of review by a Special Medical Committee when the initial PDD retirement determination is made renders this statutory right meaningless.
Respondents’ argument that petitioner has not been denied any procedural right because he was able to bring this CPLR article 78 proceeding is rejected. Review by a Special Medical Committee provides for a further and final medical review of petitioner’s disability application by three independent physicians on a panel of medical experts. Petitioner should not be deprived of the extra measure of medical review statutorily provided to him by Retirement and Social Security Law § 607-b.
Moreover, the court notes that respondents failed to address any of the evidence petitioner submitted to NYCERS after the Medical Board recommended, on March 20, 2008, the rescission of petitioner’s PDD retirement. Instead, NYCERS Board of Trustees, in its March 12, 2009 resolution (nearly a year after the Medical Board’s recommendation), simply ignored this evidence and denied petitioner’s application based on the Medical Board’s March 20, 2008 recommendation. Therefore, because respondents deprived petitioner of his statutory right of review by a Special Medical Committee, this matter must be remanded to afford petitioner this right. The March 12, 2009 resolution of the Board of Trustees, to rescind petitioner’s PDD retirement, is arbitrary, capricious and an abuse of discretion.
Conclusion
Accordingly, it is ordered, that the petition of petitioner Emmanuel Lidakis is granted to the extent that respondents, the New York City Employees’ Retirement System and the City of New York, are directed to give petitioner Emmanuel Lidakis the option of filing a written request, for review of the March 12, 2009 determination, by the Board of Trustees of respondent New York City Employees’ Retirement System, that petitioner Emmanuel Lidakis “is no longer incapacitated and that he is fit to be restored to duty as an Emergency Medical Technician D,” by a Special Medical Committee, pursuant to Retirement and Social Security Law § 607-b and Administrative Code § 13-169.