OPINION OF THE COURT
Arthur M. Schack, J.
Petitioner Ava Carter seeks: a judgment, pursuant to CPLR article 78: (a) annulling the actions of respondents, New York City Employees’ Retirement System (NYCERS) and the City of New York, by their refusal to consider her disability pension application under Retirement and Social Security Law § 607-b, the line of duty disability pension retirement law which protects emergency medical service workers in the Fire Department of the City of New York (FDNY); (b) awarding petitioner Carter a disability pension pursuant to Retirement and Social Security Law § 607-b or remanding her disability pension application back to respondent NYCERS for additional consideration; and, (c) for an order, pursuant to CPLR 2307 directing respondents to serve and file: all reports, recommendations, certificates and other documents submitted to NYCERS in connection with petitioner Carter’s disability retirement application and for copies of any and all medical records, reports or notes relating to petitioner Carter which are on file with NYCERS.
Respondents oppose the instant petition, claiming that: (a) the instant petition is barred by the statute of limitations; and, (b) petitioner Carter was not eligible for a Retirement and Social Security Law § 607-b line of duty disability pension because her employment was terminated prior to applying for a pension.
*432 The court, as will be explained following, finds that the instant petition is timely and not barred by the statute of limitations. However, petitioner Carter was not eligible for a Retirement and Social Security Law § 607-b pension when she applied for pension benefits. Therefore, the instant petition is denied and this proceeding is dismissed.
Background
Petitioner Carter began working as an emergency medical technician (EMT) with the FDNY in 1992. She is a tier 4 member of the NYCERS pension fund. In 1995, petitioner Carter was involved in a line of duty ambulance accident, sustaining spinal injuries. As a result, petitioner Carter was out of work on paid sick leave for approximately 18 months. When she returned to work, it was determined that she could no longer work on an ambulance because of her injuries. She was assigned to work as a dispatcher. Over time, her condition worsened and she developed severe pain and locking of her hands. Petitioner Carter, on May 10, 2006, was diagnosed with bilateral carpal tunnel syndrome, disc herniations at C5-6 and L5-S1, left radiculopathy, tendinitis, fluid in the distal ulnar joint and bilateral ulnar neuropathy. Accordingly, on that day, petitioner Carter stopped working for medical reasons and remained on an unpaid medical leave of absence. Then, on August 10, 2006 and September 28, 2006, petitioner Carter underwent carpal tunnel release surgeries.
Subsequently, petitioner Carter was diagnosed as suffering from reflex sympathetic dystrophy (RSD) and complex regional pain syndrome (CRPS). RSD is defined as a condition characterized by diffuse pain, swelling and limitation of movement that follows an injury such as a fracture of an arm or leg. The symptoms are out of proportion to the injury and may linger long after the injury has healed. (See http://www.medterms.com/ script/main/art.asp?articlekey=12898.) CRPS, also called reflex sympathetic dystrophy syndrome, is a chronic pain condition in which levels of nerve impulses are sent to an affected site. Experts believe that CRPS occurs as a result of a dysfunction in the central or peripheral nervous systems. (See http:// www.medicinenet.com/complex_regional_pain_syndrome/ article.htm.)
FDNY, by letter dated July 30, 2008, advised petitioner Carter that because she had been absent and unable to perform her job since April 2, 2007, her employment was subject to be *433 terminated on August 11, 2008. Then, FDNY, by letter dated August 20, 2008, informed petitioner Carter that her employment had been terminated as of August 11, 2008, pursuant to Civil Service Law § 71, also known as a medical separation. On March 3, 2009, petitioner Carter was implanted with a spinal cord stimulator to alleviate her pain.
Petitioner Carter, on May 9, 2007, applied for a line of duty disability pension (also called a performance of duty disability pension), pursuant to Retirement and Social Security Law § 607-b, because of her hand and spinal conditions. NYCERS Medical Board, on June 21, 2007, denied this application. NYCERS Board of Trustees, on October 11, 2007, ratified this recommendation. Petitioner Carter, on June 25, 2007, filed for a non-line-of-duty disability pension, pursuant to Retirement and Social Security Law § 605 and, again, for a line of duty pension, pursuant to Retirement and Social Security Law § 607-b. Again, the Medical Board recommended denial of the applications and the Board of Trustees ratified the denial recommendation on February 14, 2008. Petitioner Carter appealed this decision by filing for a final medical review in March 2008. Then, in May 2008, a special medical review committee found her fit for full EMT duty and denied her application. Petitioner Carter, in July 2008, was awarded Social Security disability benefits, based upon a finding that she was medically unfit for any job.
Petitioner Carter, on January 14, 2009, again filed for a non-line-of-duty disability retirement pension, pursuant to Retirement and Social Security Law § 605, based upon her RSD and CRPS conditions, alleging these conditions had developed as a result of her line of duty activities and injuries. Thereafter, in a series of e-mails and letters exchanged between petitioner Carter’s attorney and respondents, commencing on June 3, 2009, petitioner Carter requested that her application be amended to also request a pension pursuant to Retirement and Social Security Law § 607-b, claiming that in error she marked only the circle requesting that her application be considered pursuant to Retirement and Social Security Law § 605. Respondents refused to honor this request.
Petitioner Carter, on August 27, 2009, was approved for a disability pension, pursuant to Retirement and Social Security Law § 605, based upon a finding by the Medical Board that documentary and clinical evidence substantiated her claim that she was disabled from performing EMT duties with FDNY as a result of the placement of a permanent internal spinal cord *434 stimulator and her history of RSD. The Medical Board, because petitioner Carter had more than 10 years of service when she applied for a Retirement and Social Security Law § 605 pension, did not address the issue of whether she was injured as a proximate result of an injury sustained in the line of duty.
Petitioner Carter then asked for copies of the Medical Board minutes and requested that she be permitted to appear before the Board of Trustees to request an upgrade to a Retirement and Social Security Law § 607-b pension. The Medical Board did not furnish petitioner Carter with the minutes and her request to appear before the Board of Trustees was denied because respondents found her to be ineligible for a Retirement and Social Security Law § 607-b pension. Petitioner Carter received correspondence from respondents, dated October 9, 2009, stating that her application for retirement had been finalized at the October 8, 2009 meeting of the Board of Trustees, at which time her Retirement and Social Security Law § 605 pension had been approved.
Petitioner commenced the instant proceeding, challenging the October 8, 2009 determination, on January 28, 2010. Petitioner does not challenge the earlier denial of her pension applications.
Statute of Limitations
Respondents, in opposition to the instant petition, argue that petitioner Carter’s challenge to the denial of a Retirement and Social Security Law § 607-b pension is time-barred, because this proceeding was not commenced within four months of respondents’ determination that petitioner Carter was not eligible for a line of duty injury pension, as required by CPLR 217 (1). This is predicated upon respondents’ contention that June 4, 2009 e-mails from respondents’ administrative personnel to petitioner Carter’s counsel, advising counsel that petitioner Carter was not eligible for a Retirement and Social Security Law § 607-b pension because she was no longer employed at the time that she applied, was a final determination that started running the statute of limitations.
It is well settled that to commence a timely proceeding pursuant to CPLR article 78, “a petitioner must seek review of a determination within four months after the determination to be reviewed becomes final and binding.” (Matter of Barresi v County of Suffolk, 72 AD3d 1076, 1076 [2d Dept 2010], lv denied 15 NY3d 705 [2010]; see Walton v New York State Dept. of Correctional Servs., 8 NY3d 186, 194-196 [2007]; Matter of Best *435 Payphones, Inc. v Department of Info. Tech. & Telecom, of City of N.Y., 5 NY3d 30, 34 [2005].) “In addition, petitioner’s direction of correspondence to respondents, which can be viewed, at most, as a request for reconsideration, does not toll or revive the Statute of Limitations.” (Matter of Lubin v Board of Educ. of City of N.Y., 60 NY2d 974, 976 [1983]; see Matter of Edwards v New York City Employees’ Retirement Sys., 190 AD2d 545, 545 [1st Dept 1993], citing Matter of Cauldwest Realty Corp. v City of New York, 160 AD2d 489 [1st Dept 1990].)
However, the court rejects respondents’ contention that petitioner Carter’s challenge of her denial of a. Retirement and Social Security Law § 607-b pension is time-barred. NYCERS Board of Trustees never made a final determination with respect to granting petitioner Carter a line of duty disability pension, pursuant to Retirement and Social Security Law § 607-b. The process by which a NYCERS member applies for an accidental disability retirement involves a two-tier administrative process. First, the three-physician NYCERS Medical Board determines whether the member is disabled for the performance of duty and ought to be retired, and if the member is disabled, whether the disability is a natural and proximate result of an accidental injury received in city-service, which recommendation is then certified to the NYCERS Board of Trustees. Second, the NYCERS Board of Trustees is the body ultimately responsible for determining the issue of service-relation causation and retiring the NYCERS member. (Matter of Meyer v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund, 90 NY2d 139, 144 [1997], rearg denied 90 NY2d 936 [1997].)
Thus, it follows that because the NYCERS Board of Trustees is the only body that can retire a member, a recommendation from administrative employees indicating that an application will be denied, as occurred in the instant proceeding, cannot be construed as a final determination commencing the running of the statute of limitations. Further, this conclusion is consistent with the well-recognized holding that internal correspondence, pursuant to a request to review a petitioner’s claim for benefits, cannot be considered anything more than a request for reconsideration, and does not have the effect of reviving a claim or tolling the statute of limitations. (See Barresi at 1077-1078, citing Matter of Tamarkin v New York City Dept. of Educ., 44 AD3d 502 [1st Dept 2007]; Matter of Turner v Bethlehem Cent. School Dist., 265 AD2d 640 [3d Dept 1999].)
*436 The NYCERS Board of Trustees .finalized petitioner Carter’s Retirement and Social Security Law § 605 disability pension on October 9, 2009, but never considered her application for a line of duty disability pension, pursuant to Retirement and Social Security Law § 607-b, because her employment had been previously terminated. Therefore, the statute of limitations did not start to run until October 9, 2009. The instant proceeding was timely commenced within four months after October 9, 2009.
Petitioner’s Eligibility for a Line of Duty Pension
Petitioner Carter, in support of the instant petition, contends that her medical condition and history, as discussed above, establish that she was disabled as the result of a line of duty injury. Further, she asserts that the filing requirements outlined in Retirement and Social Security Law § 605, for a non-line-of-duty disability retirement, also apply to Retirement and Social Security Law § 607-b, for a line of duty disability retirement, based upon no new filing requirements being outlined in Retirement and Social Security Law § 607-b. Specifically, petitioner Carter argues that she is eligible for Retirement and Social Security Law § 607-b benefits because her pension application was filed within one year of her termination from service for medical reasons, as allowed, pursuant to Retirement and Social Security Law § 605 (b). Further, petitioner Carter avers that this construction of the law is consistent with the legislative intent in enacting Retirement and Social Security Law § 607-b, to afford EMTs greater retirement benefits consistent with those offered to uniformed FDNY personnel. Accordingly, petitioner Carter concludes that respondents’ decision to deny her a Retirement and Social Security Law § 607-b pension resulted in her receiving a retirement allowance substantially less than one to which she is entitled to receive and this decision is arbitrary, capricious, unreasonable and unlawful.
Respondents, in opposition, argue that petitioner Carter is not entitled to receive a Retirement and Social Security Law § 607-b pension, since an applicant must still be employed in an eligible title when applying pursuant to Retirement and Social Security Law § 607-b (a). Thus, since petitioner Carter’s employment had been terminated as of August 11, 2008 and her application was not filed before that date, she was ineligible to receive Retirement and Social Security Law § 607-b benefits.
Respondents, in presenting the above argument, also rely upon NYCERS’ Summary Plan Description booklet (SPD booklet) (at 54), which states that
*437 “Emergency Medical Technicians (EMTs) or Advanced EMTs who become mentally or physically incapacitated as a natural and proximate result of an injury sustained in the performance and discharge of duty on or after March 17, 1996 shall be entitled to a disability benefit ... In order to file an application for this type of disability retirement, you must be employed in the title of EMT or Advanced EMT at the time you file.” (Emphasis added.)
In addition, the NYCERS disability retirement application states that to apply for a Retirement and Social Security Law § 607-b pension, “[y]ou must file this application while you are actually employed in the eligible titles.” (NYCERS application for disability retirement for tier 4 members, at 4.) Respondents also contend that NYCERS’ determination, as the agency responsible for administering the pension system, should be upheld.
Finally, respondents argue that in the event that the court finds that petitioner is entitled to a pension pursuant to Retirement and Social Security Law § 607-b, the court must remand the matter back to NYCERS for further consideration, since only NYCERS Board of Trustees can grant a Retirement and Social Security Law § 607-b line of duty disability pension.
“It is well settled that the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld.” (Matter of Howard v Wyman, 28 NY2d 434, 438 [1971], rearg denied 29 NY2d 749 [1971]; see Matter of Transitional Servs. of N.Y. for Long Is., Inc. v New York State Off. of Mental Health, 13 NY3d 801, 802 [2009]; Matter of Brooklyn Assembly Halls of Jehovah’s Witnesses, Inc. v Department of Envtl. Protection of City of N.Y., 11 NY3d 327, 334 [2008]; Matter of Diggins v New York City Fire Dept. Arts. 1 & 1B Pension Funds, 183 AD2d 422, 423 [1st Dept 1992], lv denied 80 NY2d 760 [1992]; Matter of Joseph v Board of Trustees of N.Y. City Teachers’ Retirement Sys., 138 AD2d 378, 379-380 [2d Dept 1988].)
Turning to the issues raised in the instant proceeding, in discussing available retirement benefits, the Court of Appeals, in Matter of Roberts v Murphy (2 NY3d 641, 644 [2004]), explained that
“Retirement and Social Security Law article 15 provides a comprehensive scheme of retirement benefits through which city employees may receive a pension upon retirement from service, after meeting specified age and length-of-service requirements *438 (see e.g. Retirement and Social Security Law §§ 600 — 604-h). Employees who are disabled while on the job, and are unable to perform their duties, may retire and receive benefits prior to meeting age and the statutory length-of-service requirements (see Retirement and Social Security Law §§ 605 — 607-d).”
More specifically, Retirement and Social Security Law § 605 provides a disability retirement allowance for applicants who worked 10 years or more and become disabled as a result of non-line-of-duty injuries/ailments, with retirees receiving one third of their final salary. Relevant to the instant dispute, Retirement and Social Security Law § 605 (b) (2) provides that
“[a]t the time of the filing of an application pursuant to this section . . .
“The application must be filed ... in the case of a member who was placed on a leave of absence for medical reasons without pay, either voluntarily or involuntarily, at the time he ceased being paid, application may be made not later than twelve months after the date the employee receives notice that his employment status has been terminated.”
In contrast, Retirement and Social Security Law § 607-b (a), which provides for a line of duty disability retirement pension, states:
“Any member of the New York city employees’ retirement system who is employed by the city of New York or by the New York city health and hospital corporation in the position of emergency medical technician or advanced emergency medical technician . . . who . . . becomes physically or mentally incapacitated for the performance of duties as the natural and proximate result of an injury, sustained in the performance or discharge of his or her duties shall be paid a performance of duty disability retirement allowance equal to three-quarters of final average salary.” (Emphasis added.)
Roberts v Murphy is particularly relevant to the instant dispute. The Court of Appeals, in Roberts v Murphy, addressed the issue of whether EMTs were entitled to additional medical review by a special medical committee, pursuant to Retirement and Social Security Law § 605 (e), before their three-quarter disability retirement benefits and health insurance coverage were terminated, pursuant to Retirement and Social Security *439 Law § 607-b. In Roberts v Murphy (at 644), the Court noted that
“Supreme Court concluded that petitioners were entitled to the additional medical review, finding ‘ambiguity inherent in RSSL § 607-b.’ In the court’s words, ‘[b]ecause RSSL § 607-b incorporates RSSL § 605 (c) by reference, and the procedures referred to therein were subsequently expanded by RSSL § 605 (e) to include medical review, resort should be made to interpretation beyond the words of the statute.’ The Appellate Division affirmed, noting that ‘Retirement and Social Security Law § 607-b is not a “stand-alone” statute’ (305 AD2d 237, 238 [1st Dept 2003]).”
The Roberts v Murphy Court (at 645), after recognizing that Retirement and Social Security Law § 607-b was enacted “in 1998 to rectify a ‘grossly unfair’ and ‘serious inequity’ that became apparent after the City’s Emergency Medical Service merged into the Fire Department Bureau of Emergency Medical Services,” since “EMTs worked side-by-side with members of the Fire Department but received drastically different disability retirement benefits,” nevertheless reversed the Appellate Division’s holding (at 646), explaining that
“[t]he plain language of Retirement and Social Security Law § 607-b specifically references only section 605 (c). Significantly, after enacting section 605 (e), the Legislature did not amend section 607-b to incorporate it. Additionally, section 605 (e) states that it applies only to those who seek benefits ‘pursuant to this section’ — not the enhanced benefits under section 607-b. The NYCERS Rules promulgated thereunder also provide that they govern ‘all applications for disability retirement filed by members subject to the provisions of § 605 of Article 15 of the RSSL’ (NYCERS Rules, rule 23 [a] [1]).”
Discussion
Following the Court of Appeals’ holding and rationale in Roberts v Murphy, this court is compelled to conclude that because Retirement and Social Security Law § 607-b (a) does not reference or incorporate the language of Retirement and Social Security Law § 605 (b) (2), petitioner is not entitled to the extended time to file as is provided in the latter provision. Accordingly, Retirement and Social Security Law § 607-b (a) *440 must be interpreted as written, applying only to “[a]ny member of the New York city employees’ retirement system who is employed by the city of New York or by the New York city health and hospital corporation in the position of emergency medical technician or advanced emergency medical technician” (emphasis added).
Thus, it follows that this court has no authority to afford petitioner the relief that she seeks. In so holding, it is noted that any request for relief on the ground that the Legislature intended to provide better protection for EMTs who are injured in the line of duty would be better addressed by the Legislature. (See Matter of Lidakis v New York City Employees’ Retirement Sys., 27 Misc 3d 1150, 1157 [2010] [discussing the Legislature’s response to the Court of Appeals’ Roberts v Murphy decision, with the amendment of Retirement and Social Security Law § 607-b (L 2004, ch 725, § 1 [eff Nov. 24, 2004]), to specifically provide that an EMT NYCERS member who makes an application for section 607-b retirement shall be entitled to invoke the medical review procedure provided for in Retirement and Social Security Law § 605 (e)].) This is also supported by the above-quoted provisions of the SPD booklet and by the retirement applications, as well as the general principle of law that provides that the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld. (See Matter of Howard v Wyman, supra; Matter of Transitional Servs. of N.Y. for Long Is., Inc. v New York State Off. of Mental Health, supra; Matter of Brooklyn Assembly Halls of Jehovah’s Witnesses, Inc. v Department of Envtl. Protection of City of N.Y., supra; Matter of Diggins v New York City Fire Dept. Arts. 1 & 1B Pension Funds, supra; Matter of Joseph v Board of Trustees of N.Y. City Teachers’ Retirement Sys., supra.)
The court’s function in a CPLR article 78 proceeding is to determine whether the action of an administrative agency had a rational basis or was arbitrary and capricious. (Matter of Borenstein v New York City Employees’ Retirement Sys., 88 NY2d 756, 760 [1996]; Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 230-231 [1974].) “Arbitrary action is without sound basis in reason and is generally taken without regard to the facts.” (Pell at 231.) Administrative agencies must act “lawfully, with due regard to the essential evidence and in a nonarbitrary fashion.” (Matter of VR Equities v New York City *441 Conciliation & Appeals Bd., 118 AD2d 459, 461 [1st Dept 1986].) Moreover, when an administrative agency has not observed its own standards or has violated lawful procedure by denying an applicant his or her statutory rights, its determination cannot be sustained. (CPLR 7803 [3].)
A rational basis exists where the determination is “[supported] by proof sufficient to satisfy a reasonable [person], of all the facts necessary to be proved in order to authorize the determination.” (Matter of Ador Realty, LLC v Division of Hous. & Community Renewal, 25 AD3d 128, 139-140 [2d Dept 2005], quoting Pell at 231; see Matter of Consolation Nursing Home v Commissioner of N.Y. State Dept. of Health, 85 NY2d 326, 331 [1995]; 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 180 [1978]; Matter of Sullivan County Harness Racing Assn. v Glasser, 30 NY2d 269 [1972]; Sewell v City of New York, 182 AD2d 469 [1st Dept 1992], lv denied 80 NY2d 756 [1992].) If the reviewing court finds that the agency determination has a rational basis, supported by substantial evidence, such determination must be sustained. (Matter of Navaretta v Town of Oyster Bay, 72 AD3d 823 [2d Dept 2010]; Matter of Halperin v City of New Rochelle, 24 AD3d 768 [2d Dept 2005]; Matter of Dawson v Zoning Bd. of Appeals of Town of Southold, 12 AD3d 444 [2d Dept 2004].)
When the decision under review is not arbitrary and capricious, the reviewing court in an article 78 proceeding is prohibited from substituting its own judgment for that of the agency. (See Morley v Arricale, 66 NY2d 665 [1985]; Matter of Purdy v Kreisberg, 47 NY2d 354 [1979]; Pell at 230-232.) Therefore, respondents’ refusal to consider petitioner Carter’s disability pension application, pursuant to Retirement and Social Security Law § 607-b, is neither arbitrary nor capricious nor an abuse of discretion nor irrational.
Finally, the court declines to order respondents to produce any additional documents, since it appears that a complete record was filed by respondents with their answer. Further, petitioner Carter does not identify any documents that she believes have not been produced.
Conclusion
Accordingly, it is ordered that the petition of Ava Carter, seeking a judgment, pursuant to CPLR article 78, to annul the action of respondents, New York City Employees’ Retirement System and the City of New York, by their refusal to consider *442 her line of duty disability pension application, pursuant to Retirement and Social Security Law § 607-b, and either awarding petitioner Ava Carter a performance of duty disability pension, pursuant to Retirement and Social Security Law § 607-b, or remanding her application to respondents, New York City Employees’ Retirement System and the City of New York, for a performance of duty disability pension, pursuant to Retirement and Social Security Law § 607-b, and related relief, is denied; and it is further ordered that the instant proceeding is dismissed.